UNITED STATES of America,
Plaintiff-Appellee,

v.

Marco Tulio DEL AGUILA–REYES,
Defendant-Appellant.

No. 83–2176.

United States Court of Appeals,
Fifth Circuit.

Dec. 23, 1983.

Rehearing Denied Jan. 24, 1984.

Joe A. Cisneros, McAllen, Tex. (court-appointed) and Joseph W. Barbisch, Jr., Austin, Tex. (court-appointed), for defendant-appellant.

John M. Potter and James R. Gough, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.

Before RUBIN, GARWOOD and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Marco Tulio Del Aguila-Reyes appeals from a judgment of conviction of importation and of possession of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 952(a). The sole issue is the sufficiency of the evidence to sustain the conviction. Finding the evidence sufficient to establish guilt of both offenses beyond a reasonable doubt, we affirm.

I.

On October 5, 1982, Del Aguila-Reyes entered the United States at Hidalgo, Texas, driving a GMC Jimmy with Guatemala license plates. He was accompanied by his brother, Estanislao. After they had obtained permission to enter the United States

and to proceed to Miami, Florida, a customs employee, John Gordon, commanded a trained dog to "sniff" the vehicle for contraband. The dog indicated that he smelled something in an area beneath the vehicle's two bucket seats. Gordon looked under the vehicle and observed a factory-built compartment. The compartment was visible only from beneath the vehicle, so it could not be seen by an occupant of the vehicle.

Gordon then ran a clothes hanger through a crack in the compartment, withdrew the hanger, and smelled perfume. Realizing that perfume is often used to mask the odor of drugs, Gordon sought access to the compartment. He tipped forward the passenger seat and saw a rubber mat secured by a metal strip. Gordon felt screws through the mat. After removing the mat (which required first removing the seat), Gordon found that the screws he had felt secured a metal plate. He removed the plate and found in the compartment twenty-four packages wrapped in plastic tape. Del Aguila-Reyes showed no concern while the search of the vehicle was taking place and after the packages were found. Upon being questioned by customs agents, he admitted that he had made the Guatemala-Miami trip on several occasions, but volunteered that this was the first time that his brother had accompanied him on a trip to the United States.

A field test was run on the substance contained in the packages. The test revealed that the packages contained cocaine which was ninety-five percent pure. The street value of the approximately thirty pounds of cocaine was twenty to forty million dollars and the wholesale value was five million dollars.

On the following day, Del Aguila-Reyes was told that cocaine had been found in the vehicle. He denied knowing that the cocaine was in the vehicle but did not seem to be concerned or nervous about its discovery.

When arrested, Del Aguila-Reyes had $900 on his person. He said that he had been paid $500 plus expenses to drive to Miami and deliver the GMC Jimmy to Oscar Diaz. According to instructions from his employer, Edgar Galvez, another Guatemalan, he was to receive three Toyota pickups from Diaz and then bring the trucks back to Guatemala. (Del Aguila-Reyes was to drive the GMC Jimmy, towing one Toyota; his brother was to drive the second Toyota, towing the third.)

At the trial, Del Aguila-Reyes testified that he was employed as a bus driver in Guatemala. He identified Edgar Galvez as a person who bought and sold pickups. According to his testimony, Galvez had hired him four times to take the GMC Jimmy to Miami and to bring back Toyota pickups. Each time he delivered the GMC Jimmy to Oscar Diaz who would keep the truck for two or three days. According to Del Aguila-Reyes, Diaz would say that he was taking the truck to be washed or to see if it needed any repairs. Diaz would then call him to come pick up the GMC Jimmy and the other trucks he was to tow to Guatemala. He also testified, contrary to his statement at the initial search of the vehicle, that his brother had accompanied him on a previous trip to Miami.

At the conclusion of the government's case, Del Aguila-Reyes moved for a directed verdict of acquittal. His motion was denied by the trial judge. The jury returned a verdict of guilty on the counts which charged a violation of 21 U.S.C. §§ 841(a)(1) and 952(a). This appeal followed.

## II.

■ Del Aguila-Reyes argues that the evidence was insufficient to sustain his conviction on the two counts because it was insufficient to prove that he knowingly imported and possessed cocaine with intent to distribute. In *United States v. Bell,* 678 F.2d 547, 549 (5th Cir.1982) (en banc), *affirmed on other grounds,* —— U.S. ——, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983), this court recently reassessed the burden of proof on the government in criminal prosecutions. In *Bell,* we rejected our previous standard requiring the government's case, when based on circumstantial evidence, to be inconsistent with every reasonable hy-

pothesis of innocence. Evidence, under *Bell,* is constitutionally sufficient when it enables a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt.[1] We therefore reverse convictions only when the evidence is so weak or so contrary to guilt that it would compel a jury to entertain a reasonable doubt of the defendant's guilt.[2]

In examining Del Aguila-Reyes's contention that there was insufficient evidence that he knowingly imported and possessed the cocaine found in the vehicle, we must view the evidence, together with all reasonable inferences, in the light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). The burden nevertheless is on the government to prove beyond a reasonable doubt every element of the crime charged. *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). The government may prove its case through the use of circumstantial evidence so long as the total evidence, including reasonable inferences, is sufficient to warrant a jury's conclusion that the defendant is guilty beyond a reasonable doubt.[3]

The government, of course, was required to prove in this case that Del Aguila-Reyes *knowingly* possessed and imported the contraband.[4] Because the cocaine was located in a compartment which was not visible or readily accessible to him, his possessing and driving a vehicle which contained contraband cannot, standing alone in this case, suffice to prove guilty knowledge. There is evidence, however, which clearly supports an inference of guilty knowledge on the part of the defendant here. The

jury was well aware that the cargo with which the defendant had been entrusted was very valuable; its wholesale value was approximately five million dollars. It was a reasonable inference that Del Aguila-Reyes would not have been entrusted with bringing this valuable cargo to Miami if he were a mere casual employee, ignorant of all details surrounding his responsibility and the importance of the cargo in his care. Even this reasonable inference, however, if there were nothing more, might well not support a finding of guilty knowledge. But this is not all.

By his own admission, Del Aguila-Reyes had made this trip for Galvez on at least three other occasions. During his journey of 1,500 miles from the Texas border to Miami, it is reasonable to assume that he passed through cities with Toyota dealerships; indeed, many cities. The jury could have inferred that surely he knew Toyotas could be purchased in cities much nearer to Guatemala than Miami, with considerably less effort and lower transportation costs. Furthermore, as he had done on the three previous trips, Del Aguila-Reyes, upon arrival in Miami, was to turn over the GMC Jimmy to Oscar Diaz. On previous occasions, Diaz kept the GMC Jimmy for two or three days. Diaz would then call him to pick up the truck and the Toyotas. From these suspicious facts, it was reasonable for the jury to infer that Del Aguila-Reyes should have known that his trip to Miami was prompted for some additional, probably illegal, reason. In other words, the jury could infer that any professed lack of knowledge of the cocaine on Del Aguila-Reyes's part which was based on the Toyota

---

1. *Bell,* 678 F.2d at 549; *accord, United States v. Snyder,* 707 F.2d 139, 146 (5th Cir.1983); *United States v. Ackal,* 706 F.2d 523, 529 (5th Cir.1983); *United States v. Lorence,* 706 F.2d 512, 518 (5th Cir.1983).

2. *United States v. Lorence,* 706 F.2d 512, 518 (5th Cir.1983); *United States v. Alonzo,* 681 F.2d 997, 1000 (5th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 386, 74 L.Ed.2d 517 (1982).

3. *See* note 1, *supra.*

4. Count 4 of the indictment charged Del Aguila-Reyes with knowingly possessing, with intent to distribute, cocaine. As noted above, thirty pounds of cocaine was found in the GMC Jimmy. As a general rule, intent to distribute can be inferred from the possession of a large amount of a controlled substance. *United States v. Meneses-Davila,* 580 F.2d 888, 897 (5th Cir.1978). Therefore, if Del Aguila-Reyes was guilty of knowingly possessing thirty pounds of cocaine, his intent to distribute the cocaine can be inferred from the sizable amount possessed.

aspect of the venture, was evidence of "deliberate ignorance." *See United States v. Restrepo-Granda,* 575 F.2d 524 (5th Cir. 1978).

Added to these inferences is the permissible inference of guilty knowledge to be drawn from his lack of concern and surprise upon being told that cocaine had been found in the vehicle he was driving.

Finally, there is the false statement which Del Aguila-Reyes made to the customs agents that this was the first trip upon which he had been accompanied by his brother. A jury could consider this false statement as one designed to conceal his brother's culpability in a known illegal enterprise.

Upon these facts, the jury surely was not compelled to find guilty knowledge; it could well have rejected inferences which are reasonable to draw from these facts. We hold only that there was sufficient evidence from which the jury could infer guilty knowledge on the part of the defendant beyond a reasonable doubt—that he knowingly imported and possessed cocaine with intent to distribute. He is not entitled to a reversal on the ground that he should have been acquitted as a matter of law, and his conviction is therefore

AFFIRMED.

ALVIN B. RUBIN, Circuit Judge, dissenting:

The government certainly adduced evidence that tended to incriminate the defendant. But much was lacking to prove him guilty beyond reasonable doubt. Perfume apparently could not be smelled from the driver's seat or anywhere else unless someone crawled under the truck and probed a crack in a compartment with a clothes-hanger. Customs officials did not know whether or where to probe until their dog directed their attention to the compartment beneath the vehicle. That compartment was not visible to the driver or readily accessible by him. It was a factory-built unit, installed to reduce road noise. To get to it, the officials had to unbolt the seats, unscrew an aluminum strip holding down a rubber floor mat, remove the mat, and finally unbolt a metal floor plate.

The defendant's lack of concern is as consistent with complete innocence and faith in fair adjudication as it is with a mask of guilt. Nervousness is frequently used as evidence of guilty knowledge;[1] the majority would have us construe the absence of nervousness as affirmative evidence of culpability. The requirement that the government prove knowledge and intent cannot be nullified so easily. That Aguila-Reyes was driving a vehicle containing a secreted cargo of contraband does not alone suffice to prove either guilty knowledge or intent. It is perfectly possible that Aguila-Reyes was indeed the cat's paw he claimed to be.

My brethren infer guilt from the value of the cargo and the supposition that the owner of so precious a store of contraband would not likely entrust it to an innocent. I do not know how the minds of narcotics dealers work, but the inference that dupes who are unaware that they carry valuable cargo are less likely to steal it than witting accomplices appears to me equally tenable. Of course, Toyotas could be purchased elsewhere than in Miami. The defendant may well have assumed that the price charged his employer by the Miami dealer was sufficiently lower than that sought by Texas dealers to warrant paying him the sum of less than $200 per automobile to travel the extra distance. The final straw of supposed circumstantial evidence my brethren rely on is the defendant's misstatement concerning his brother's prior activities. After the hidden packages were found, the defendant might be as likely to shield his brother from whatever accusation might follow as he would to attempt to exonerate him from actual conviction.

The government cites seven of our cases in which the driver of a vehicle was convict-

---

1. *See, e.g., United States v. Moreno,* 579 F.2d 371, 372 (5th Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1217, 59 L.Ed.2d 456 (1978).

ed for possession of its contents. My brethren do not cite them, so I suppose the majority opinion does not rely on them, but it should be noted that in each there was evidence that the driver had some connection with the cargo beyond his chauffeuring of the vehicle or at least some reason to be suspicious that his mission was illegal. Thus, in *United States v. Moreno,* 579 F.2d 371, 372 (5th Cir.1978), the compartment containing drugs had been welded onto the truck's exterior and was partly visible to a person simply inspecting the back of the truck. The defendant in *United States v. Legeza,* 559 F.2d 441, 442 (5th Cir.1977), was driving a car that smelled of marijuana, testified that he knew pillow cases had been concealed and that they felt peculiar, and acknowledged that the car's owner was using him in some kind of illicit scheme. The odor of marijuana was about the vehicle in *United States v. Maspero,* 496 F.2d 1354, 1356–68 (5th Cir.1974), as well, and seeds were in plain view on the trailer's floor. Moreover, the defendants in *Maspero* engaged in a variety of suspicious activities while under surveillance. Again, the odor of marijuana was present about the automobile in *United States v. Rodriguez,* 556 F.2d 277, 278 (5th Cir.1977). The defendant in *United States v. Fonseca,* 490 F.2d 464, 466 (5th Cir.1974), *cert. denied,* 419 U.S. 1072, 95 S.Ct. 660, 42 L.Ed.2d 668 (1974), had previously been stopped in the same automobile, and marijuana seeds and rolling papers were discovered in that earlier inspection. A strong odor of heroin was present in the car in *United States v. Gonzalez,* 700 F.2d 196, 204 (5th Cir.1976), and the defendant had been present during several veiled discussions of the drug transaction.

Perhaps knowledge of contraband can be inferred from a cargo so large as to be obvious. It is difficult to imagine that the defendant whose conviction we affirmed in *United States v. Almendarez,* 534 F.2d 648 (5th Cir.1976), *cert. denied,* 429 U.S. 977, 97 S.Ct. 486, 50 L.Ed.2d 585 (1976), did not

know of the 3000 pounds of marijuana he was carrying. But no uninformed driver is likely to suspect the existence of a cargo completely concealed in a factory-built compartment under the floor of a vehicle. Mere possession of a vehicle being transported in an overtly legitimate commercial enterprise cannot alone support an inference of knowledge of the presence of contraband.[2]

In short the scent of guilt my brethren detect is as faint as the perfume from the cocaine. It requires such probing that it can, in my opinion, scarcely defy reasonable doubt.

For these reasons, I respectfully dissent.

2. *United States v. Castillo,* 524 F.2d 286 (10th Cir.1975); *United States v. Martinez,* 514 F.2d 334 (9th Cir.1975).