# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

## No. 00-50355
_____

### UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

### LENARD COLEMAN,

Defendant-Appellant.

_____

### Appeal from the United States District Court
### for the Western District of Texas
### (EP-99-CR-549-1-H)
_____

February 12, 2001

Before WIENER, BARKSDALE, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

Convicted for possession with intent to distribute, Lenard Coleman contests the district court's denying his motion for judgment of acquittal. We **AFFIRM** the conviction, but **VACATE** Coleman's sentence and **REMAND** because, as raised by the Government, the sentence is erroneous under the Supreme Court's recent decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000).

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

In March 1999, Coleman hired Roy Lafayette (Coleman had known him several years) to accompany Coleman as he drove the tractor trailer he owned from Mississippi to Phoenix, Arizona. After making the delivery in Phoenix, they picked up a load of cottonseed in Eloy, Arizona. The worker who loaded the cottonseed testified he did *not* load anything on the truck *but* cottonseed. Lafayette testified he thought Coleman was running short on money at the time.

On 29 March, Coleman and Lafayette stopped at a truck stop in Vinton, New Mexico; Coleman told Lafayette he was going to "holler at his [(Coleman's)] cousin". Coleman did *not* invite Lafayette to accompany him. Coleman departed in his tractor trailer, leaving Lafayette at the truck stop for 45 minutes to an hour.

Shortly thereafter, when they stopped at a motel, Coleman gave Lafayette money and told him that, while Lafayette was registering, he (Coleman) was going to "holler" at his cousin again. But, once again, he did *not* ask Lafayette to accompany him. Lafayette checked into the motel at 11:45 p.m. Because he fell asleep at the motel, Lafayette was unsure if, while Coleman was absent, he had the tractor trailer with him. Coleman did *not* return until around 3:00 a.m.

Before leaving the motel later that morning (30 March 1999), Coleman checked the truck. Aside from getting something to eat, if

he and Lafayette stopped between the motel and the Sierra Blanca checkpoint (Texas), it was *only* for a few minutes.

When Coleman drove the truck into that checkpoint, Lafayette was asleep. (Lafayette testified he (Lafayette) had smoked "a couple of joints of marijuana".) While a Border Patrol Agent was talking with Coleman, the Agent's drug canine alerted to Coleman's trailer. Once inside it, the canine alerted to nine cardboard boxes loaded between pallets of cottonseed.

When Border Patrol Agents opened the boxes, they found numerous bundles of marijuana wrapped in black material. The nine boxes contained approximately 1,300 pounds of marijuana (approximately 590 kilograms), with an approximate $1.2 million street value. The bundles had been sprayed with foam to mask the marijuana odor. Coleman appeared surprised when the Agents found the marijuana.

Lafayette was called as a witness by the Government. Coleman did *not* testify; *nor* did he put on any evidence. At the close of the evidence, Coleman moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29. *See* FED. R. CRIM. P. 29 (judgment of acquittal if evidence insufficient to sustain conviction). The motion was denied.

The jury found Coleman guilty of possession with the intent to distribute marijuana. The district court sentenced him, *inter alia*, to 78 months' imprisonment.

II.

Coleman challenges the denial of a judgment of acquittal. The Government points out the **Apprendi** error in Coleman's sentence.

A.

Denial of a judgment of acquittal motion is reviewed *de novo*. *E.g.,* **United States v. Izydore**, 167 F.3d 213, 219 (5th Cir. 1999). For a timely motion for judgment of acquittal, as in this case, our standard for reviewing the judgment is more than well-established.

> In evaluating the sufficiency of the evidence we must affirm the verdict if a reasonable trier of fact could conclude from the evidence that the elements of the offense were established beyond a reasonable doubt, viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences from the evidence to support the verdict.

**Id.** (internal quotation marks omitted). "All credibility determinations and reasonable inferences are to be resolved in favor of the verdict.... [I]t is *not* necessary that the evidence exclude *every* reasonable hypothesis of innocence or be wholly inconsistent with *every* conclusion except that of guilt." **United States v. Willey**, 57 F.3d 1374, 1380 (5th Cir.) (emphasis added; internal quotation marks and citations omitted), *cert. denied*, 516 U.S. 1029 (1995).

"A conviction for the offense of possession of marijuana with intent to distribute requires proof that the defendant (1) *knowingly* (2) possessed marijuana (3) with intent to distribute

4

it." ***United States v. Meshack***, 225 F.3d 556, 568 (5th Cir. 2000) (emphasis added), *cert. denied*, 2001 WL 13025 (8 Jan. 2001). According to Coleman, the evidence of his *knowledge* was insufficient.

> The knowledge element in a possession case can rarely be established by direct evidence. *Knowledge can be inferred from control of the vehicle in some cases; however, when the drugs are hidden, control over the vehicle alone is not sufficient to prove knowledge.* This is so because it is at least a fair assumption that a third party might have concealed the controlled substances in the vehicle with the intent to use the unwitting defendant as the carrier in a smuggling enterprise. Thus, it is the general rule in this circuit that where the case involves a hidden compartment, *control must be supplemented by other circumstantial evidence that is suspicious in nature or demonstrates guilty knowledge.*

***United States v. Ramos-Garcia***, 184 F.3d 463, 465 (5th Cir. 1999) (emphasis added; internal quotation marks and citations omitted). Of course, the same test applies to items concealed in a trailer, as in the case at hand, as to those in a hidden compartment because neither are "clearly visible or readily accessible". *See **United States v. Pennington***, 20 F.3d 593, 598 (5th Cir. 1994) ("[W]hether the marijuana was 'hidden' in the trailer [will determine if] the government [must] produce[] further evidence of knowledge.... [T]he control of the vehicle will suffice to prove knowledge *only* where the drugs are clearly visible or readily accessible". (emphasis added)).

It is *not* disputed that Coleman owned the tractor trailer and was driving it on entering the checkpoint. Coleman asserts the Government failed to supplement its evidence concerning his control with enough additional circumstantial evidence to establish guilty knowledge. He maintains the Government presented: little evidence he had time to load the marijuana; *no* evidence he was nervous when the drugs were discovered; and *no* evidence he and Lafayette gave conflicting statements.

Concerning the latter, an Agent testified: in his post-arrest statement, Coleman told the Agent he had *no* knowledge of the marijuana; and he was driving from Eloy, Arizona, to Orangeburg, South Carolina, with a load of cottonseed. These statements are *not* inconsistent with Lafayette's testimony. Coleman asserts his post-arrest statement was plausible.

As stated in **United States v. Del Aguila-Reyes**: "It was a reasonable inference that [the defendant] would *not* have been entrusted with ... this valuable cargo ... if he were ... ignorant of all details surrounding his responsibility and the importance of the cargo in his care." 722 F.2d 155, 157 (5th Cir. 1983) (emphasis added). Needless to say, Coleman's claim of ignorance is somewhat implausible and "suspicious in nature". *See* **Ramos-Garcia**, 184 F.3d at 465. It is highly unlikely that, without his knowledge, he would have been entrusted with drugs worth over $1 million. On the other hand, **Del Aguila-Reyes** cautioned: "Even this

6

reasonable inference, however, if there were nothing more, *might* well *not* support a finding of guilty knowledge". ***Del Aguila-Reyes***, 722 F.2d at 157 (emphasis added). "But [, as in ***Del Aguila-Reyes***,] this is *not* all." ***Id.*** (emphasis added).

There is ample evidence that Coleman had time to load the marijuana, given the testimony he left Lafayette for at least 45 minutes at the truck stop and for approximately three hours at the motel. Furthermore, because Coleman did *not* ask Lafayette to accompany him either time he "hollered at his cousin", a reasonable juror could infer that Coleman did *not* want Lafayette to know what he was doing.

Coleman contests the Government's failure to fingerprint the boxes or weigh the truck. Because of the adhesive foam in which the marijuana was packed, however, the boxes were destroyed simply by opening and repackaging them. And, the Sierra Blanca checkpoint has *no* weighing facilities.

Resolving all reasonable inferences in favor of the verdict, Coleman's control of the tractor trailer was supplemented by circumstantial evidence that was extremely suspicious in nature. The district court did *not* err in denying a judgment of acquittal.

B.

In its appellate brief, the Government, to its credit, notes Coleman's 78-month sentence is erroneous under ***Apprendi***. Coleman *not only* failed to raise this issue in his appellate brief, *but*

7

*also* failed to file a reply brief. *See, e.g., **United States v. Salazar-Flores***, No. 99-50956, 2001 WL 25691 (5th Cir. 25 Jan. 2001) (direct appeal; parties filed supplemental briefs addressing *Apprendi*'s impact).

Generally, "we review only those issues presented to us; we do *not* craft new issues or otherwise search for them in the record". ***United States v. Brace***, 145 F.3d 247, 255 (5th Cir.) (en banc) (emphasis added), *cert. denied*, 525 U.S. 973 (1998). However,

> *[w]here plain error is apparent*, the issue may be raised *sua sponte* by this court even though it is *not* assigned or specified. As the Supreme Court has recognized, [i]n exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which *no* exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings.... Fairness as well as judicial economy dictate that we address now this issue that would doubtless otherwise be raised in a subsequent *habeas* proceeding.

***United States v. Pineda-Ortuno***, 952 F.2d 98, 105 (5th Cir.) (emphasis added; internal indentation and citations omitted), *cert. denied*, 504 U.S. 928 (1992).

Despite Coleman's failure to raise the issue, for several reasons we conclude it would "seriously affect the fairness, integrity or public reputation of judicial proceedings" were we to ignore the error: first, the Government concedes the sentence was erroneous under ***Apprendi***; and second, our court has found an

8

*Apprendi* violation to be "plain error", *Meshack*, 225 F.3d at 575-78 (applying plain error review). Thus, plain error is both "apparent" and "obvious". Furthermore, judicial economy encourages consideration, for were we to exercise our discretion to find the issue forfeited, Coleman almost without doubt would raise it and/or a related issue (such as ineffective assistance of counsel) in a 28 U.S.C. § 2255 proceeding.

*Apprendi* provides: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt". *Apprendi*, 120 S. Ct. at 2362-63 (emphasis added). In applying this principle, our court recently concluded: "[I]f the government seeks enhanced penalties based on the amount of drugs..., the quantity must be stated in the indictment and submitted to a jury for a finding of proof beyond a reasonable doubt". *United States v. Doggett*, 230 F.3d 160, 165 (5th Cir. 2000), *petition for cert. filed*, __ U.S.L.W. __ (U.S. 4 Jan. 2001) (No. 00-7819). Coleman's indictment did *not* state the quantity of drugs involved, although the Government gave notice of its intent to seek enhanced penalties for a quantity of 100 kilograms or more of marijuana.

"In the case of less than 50 kilograms of marijuana [approximately 110 pounds], ... such person shall ... be sentenced to a term of imprisonment of *not more than [60 months]* ...." 28

U.S.C. § 841(b)(1)(D) (emphasis added).  In sentencing Coleman, the district court apparently applied Sentencing Guideline § 2D1.1(a)(3) and (c), under which the base offense level for drug-trafficking may be determined by the quantity of drugs involved. *See* U.S.S.G. § 2D1.1(a)(3), (c).  (The drug quantity is considered "relevant conduct" as defined in § 1B1.3.  *See* § 2D1.1, cmt. 12.) Under Sentencing Guideline § 2D1.1(c), a defendant receives a base offense level of 28 if the quantity of marijuana was at least 400, but less than 700, kilograms (approximately 880 to 1540 pounds). Applying the Guidelines in this manner led the district court to sentence Coleman to 78 months, based on a fact that was *not* proven beyond a reasonable doubt to the jury.  The sentence exceeds the aforementioned statutory maximum by 18 months.

The Government asserts:  even if the sentence is plain error, it need *not* be corrected because the amount of drugs involved is *not* in dispute.  In support, it claims Coleman stipulated at trial to the *quantity*.  Of course, "once a stipulation is entered, even in a criminal case, the government is relieved of its burden to prove the fact which has been stipulated by the parties".  **United States v. Branch**, 46 F.3d 440, 442 (5th Cir. 1995).

The Government has misread the stipulation.  The stipulation states simply, *inter alia*, that, if the Drug Enforcement Administration's chemist were present, "he would testify that the substance seized ... is, in fact, MARIJUANA, and weighs

approximately one thousand three hundred and one pounds". Based on our reading of this stipulated fact, Coleman stipulated merely that the chemist would so testify, *not* to the truth of that testimony.

Accordingly, we vacate Coleman's sentence and remand this case to the district court. "Upon remand, the district court could allow retrial ... or it could resentence [Coleman] at the lowest statutory drug amount." *Meshack*, 225 F.3d at 578, n.20; *see United States v. McWaine*, No. 99-60265, 2001 WL 30615, *4 (5th Cir. 12 Jan. 2001) (vacating sentence and remanding for proceedings consistent with *Meshack*).

### III.

For the foregoing reasons, the district court did *not* err in denying a judgment of acquittal; therefore, the conviction is **AFFIRMED**. However, in the light of *Apprendi*, the sentence was in error; accordingly, the sentence is **VACATED** and this case **REMANDED** to the district court for further proceedings consistent with this opinion.

*AFFIRMED IN PART; VACATED IN PART; REMANDED*