IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 6, 2008

Charles R. Fulbruge III
Clerk

No. 07-11142

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

JOHN WENTZELL DOWNS

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:06-CR-34-D

Before REAVLEY, CLEMENT, and PRADO, Circuit Judges.

PER CURIAM:[*]

This case concerns an appeal by John Wentzell Downs ("Downs") of his conviction, after a trial by jury, for making false statements involving aircraft parts in violation of 18 U.S.C. § 38. Downs does not appeal the jury's finding that he made false statements, nor does he challenge the suspect nature of the relevant transactions relating to work he performed on an airplane propeller

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

without the requisite legal authority. Rather, his sole ground for appeal is that there was insufficient evidence for the jury to conclude that the conduct at issue was "in or affecting interstate or foreign commerce," as required by the criminal statute at issue. 18 U.S.C. § 38(a). For the reasons provided below, we reject Downs's argument and affirm his conviction.

## I. FACTS AND PROCEEDINGS

Downs was charged by the government in a superceding indictment with making false statements involving aircraft parts in violation of 18 U.S.C. § 38. Downs, an aircraft propeller mechanic, owned and operated a business under the name of Millennium Propeller Systems, Inc. ("Millennium"). In April 2000, the Federal Aviation Administration ("FAA") issued an air agency certificate to Millennium, which authorized Millennium to operate an approved repair station under the FAA's rules and regulations. However, on March 29, 2005, after finding that Millennium demonstrated disregard for regulatory compliance which threatened aviation safety and was contrary to the public interest, the FAA revoked Downs's FAA certification. Millennium was no longer authorized by the FAA to operate a repair station, which meant that Downs could no longer perform certain work on aircraft parts, such as a propeller overhaul.

On September 12, 2005, Juan Fernandez ("Fernandez"), upon a referral, delivered a propeller to Downs for overhaul work, which included replacing the hub of the propeller. On October 5, 2005, Fernandez retrieved his overhauled propeller and received maintenance records from Downs which had been backdated to falsely represent that the overhaul of Fernandez's propeller took place on March 1, 2005, which was before the FAA certification was revoked. In a further effort to conceal when the propeller was overhauled, Downs falsely

backdated several other documents, such as FAA forms and log/maintenance books, to March 1, 2005. Most of the facts relating to the fraudulent repair seem to have arisen from Texas—where Downs's repair station and Fernandez's propeller and plane are located, and where Fernandez and Downs, as well as the mechanic who referred Fernandez to Downs, reside. However, the propeller hub that was installed as part of the repair was procured directly by Downs from a company in Florida.

At trial, Fernandez testified that he grew suspicious of Downs during the repair process after having some difficulty contacting Downs. He conducted research that revealed the FAA's revocation. Fernandez contacted the FAA based on what he claimed was a fear for his safety, as well as that of his passengers and those on the ground. This reporting ultimately led to an undercover investigation—which included the use of hidden camera surveillance and the wearing of a wire by Fernandez—that resulted in the fraud charge.

At trial, Robert Hardwick ("Hardwick"), an FAA aviation safety inspector, testified that "air safety in this country is based upon compliance with the rules and accurate[] record[s]." According to Hardwick, the FAA relies on accurate documentation regarding the maintenance of aircraft parts when examining repair stations and it cannot ensure proper maintenance activity if a repair station falsifies records. In response to a question on whether fraudulent repair records would meet the applicable statutory element of "in and affecting interstate commerce," Hardwick testified that "[w]ithout accurate maintenance records the general public very well could lose confidence in the FAA to regulate aviation safety." Evidence at trial included testimony that Downs stood to make

more by doing repairs in his shop, as opposed to farming the work out to another repair station.

Downs was found guilty of making fraudulent and false statements involving aircraft parts and was sentenced to 24 months of imprisonment and 2 years of supervised release. Downs was ordered to pay $4,000 in restitution and an assessment of $100. Downs moved for judgment of acquittal at the close of the government's case, at the close of the evidence, and after trial, at which time he also moved for a new trial. Downs's requests for acquittal and/or a new trial were rejected by the district court. He filed a timely notice of appeal.

Downs argues that the evidence was insufficient to support his conviction for fraudulent and false statements involving aircraft parts. Specifically, Downs contends that the government presented insufficient evidence for a jury to find that his acts were in or affecting interstate commerce. The government argues that the evidence—which included testimony on national air safety, the use of a propeller hub from Florida, and the effect of false record-keeping on Downs's business and the aviation industry—was enough for the jury to convict.

## II. STANDARD OF REVIEW

Because Downs moved for a judgment of acquittal at the close of the government's case, which he renewed at the close of the evidence, his challenge to the sufficiency of the evidence is preserved for de novo appellate review. See FED. R. CRIM. P. 29(a), (c)(1); United States v. Izydore, 167 F.3d 213, 219 (5th Cir. 1999). A motion for a judgment of acquittal is a challenge to the sufficiency of the evidence. United States v. Moreno, 185 F.3d 465, 470 (5th Cir. 1999). The standard in assessing a sufficiency challenge is "whether any reasonable trier of fact could have found that the evidence established the essential elements of

the crime beyond a reasonable doubt." United States v. Ortega Reyna, 148 F.3d 540, 543 (5th Cir. 1998). In applying this standard, the evidence is viewed in the light most favorable to the verdict. Id. "The government may prove its case through the use of circumstantial evidence so long as the total evidence, including reasonable inferences, is sufficient to warrant a jury's conclusion that the defendant is guilty beyond a reasonable doubt." United States v. Del Aguila-Reyes, 722 F.2d 155, 157 (5th Cir. 1983). The evidence need not "'exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt . . . . A jury is free to choose among reasonable constructions of the evidence.'" United States v. Williams-Hendricks, 805 F.2d 496, 500 (5th Cir. 1986) (quoting United States v. Bell, 678 F.2d 547, 549 (5th Cir. 1982) (en banc)). However, if the evidence equally, or nearly equally, provides circumstantial support for a theory of innocence and a theory of guilt, a conviction must be reversed because reasonable doubt necessarily exists. United States v. Lopez, 74 F.3d 575, 577 (5th Cir. 1996). This Court may affirm the verdict based on any reason supported by the record. United States v. Ho, 311 F.3d 589, 602 n.12 (5th Cir. 2002).

## III. DISCUSSION

To be found guilty of making fraudulent and false statements involving aircraft parts, in violation of 18 U.S.C. § 38(a)(1)(C), the government must prove: (1) that the defendant made and used a false writing, entry, certification, document, or record; (2) that the false writing, entry, certification, document, or record concerned an aircraft part; (3) that the false writing, entry, certification, document, or record was materially false; (4) that the defendant acted knowingly and with the intent to defraud the FAA or others; and (5) that the defendant's

conduct was in or affecting interstate commerce. As noted above, on appeal, Downs challenges only the sufficiency of the evidence as to whether the government proved that his conduct was "in or affecting interstate commerce." We reject his challenge, particularly given our required deference to the jury's determinations.

The relevant statute's use of the phrase "in or affecting interstate . . . commerce," 18 U.S.C. § 38(a), "expresses an intent by Congress to exercise its full power under the Commerce Clause" of the federal constitution. Russell v. United States, 471 U.S. 858, 859 (1985). In United States v. Lopez, the Supreme Court observed that its Commerce Clause decisions recognize three categories of activity over which Congress would have authority under the clause: (1) "the use of the channels of interstate commerce"; (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce"; and (3) "activities that substantially affect interstate commerce." 514 U.S. 549, 558–59 (1995). We hold that there was sufficient evidence at trial to affirm Downs's conviction on any of these three alternative categories.

As to the first two categories, regulation over "the channels of interstate commerce" "includes the regulation of highways, railroads, air routes, navigable rivers, and telecommunications networks," and "also reaches the misuse" of such channels. Ho, 311 F.3d at 597 (internal quotation marks omitted). Meanwhile, regulation of the "instrumentalities of interstate commerce" includes such things as "destruction of an aircraft . . . or thefts from interstate shipments." Lopez, 514 U.S. at 558 (quotation omitted). Falsifying documents involving aircraft parts to be installed on airplanes relates directly to both the instrumentalities (i.e., airplanes) and channels (i.e., airways) of interstate commerce. The evidence

that Downs's conduct impacted airplanes and airways—not only in terms of FAA safety rules intended to protect Fernandez and those affected by his plane, but also in the direct procurement of an out-of-state part to facilitate the deed in question—was enough to show that his conduct was in or affecting interstate commerce.

As to "activities that substantially affect interstate commerce," there was enough evidence of the cumulative effect of fraudulent and false documentation regarding aircraft maintenance to meet that test as well. The test can be met by direct interstate commercial activity, see, e.g., NLRB v. Jones & Laughlin Steel Corp., 301 U.S. 1, 31 (1937)—which is likely not present here—or by an "aggregation" of similar commercial activity having a direct, or at least not too attenuated, link to a substantial effect on interstate commerce. Ho, 311 F.3d at 599–602; see also United States v. Robinson, 119 F.3d 1205, 1208 (5th Cir. 1997).

Hardwick testified that the FAA relies on accurate documentation on aircraft part maintenance and that false records can result in an erosion of public confidence in the FAA's ability to regulate aviation safety and thus undermine the FAA's ability to regulate repair stations. Hardwick posited that, if confidence in the FAA is eroded, people would be less likely to fly, and this would affect interstate commerce. There was also evidence of unfair commercial advantage resulting from unauthorized repairs—a factor in the "substantially affect[ing] interstate commerce" analysis. See Ho, 311 F.3d at 603–04 (rejecting interstate commerce challenge to federal asbestos abatement violations at a fixed, intrastate location based on the fact that the defendant "gained a commercial advantage on licensed abatement companies" and deprived them of "a promising business opportunity"). Ultimately, there was sufficient evidence

7

to support a finding that Downs's fraud substantially affected interstate commerce.

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.