# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00346-CR

**William Joseph Silva, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT
NO. 10-1324-K277, HONORABLE KEN ANDERSON, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant, William Joseph Silva, of possessing a controlled substance, methamphetamine, in an amount of 400 grams or more, with intent to deliver. *See* Tex. Health & Safety Code Ann. § 481.112 (West 2010). Following the punishment phase of trial, which included evidence of appellant's three prior felony convictions, the jury assessed his punishment at confinement for life in prison. On appeal, appellant asserts in one issue that the evidence was insufficient to sustain the jury's verdict. Appellant argues that there was insufficient evidence to prove he knowingly possessed the methamphetamine found in the undercarriage of the car he was driving. We will affirm the judgment of conviction.

## BACKGROUND

On September 15, 2010, Matt Hartgrove, a detective with the Williamson County Sheriff's Department, was patrolling Interstate Highway 35 when he observed appellant driving

"nervously" in a 2000 silver Volkswagen Passat. Hartgrove testified that, unlike other drivers on the road, appellant would not acknowledge him, but instead looked like a "deer-in-the-headlights," staring straight ahead and "grasping the steering wheel at ten-and-two." The Passat had rosary beads and an air freshener hanging from the rearview mirror, and Hartgrove described the car as typical of the "clean," inconspicuous vehicles often used by drug traffickers. Believing the rosary beads and the air freshener to be a traffic violation, Hartgrove followed appellant up the highway while obtaining the car's registration information. The registration search showed that the car had recently been registered under the name Shellbie Velez in Brownsville, Texas. This information heightened Hartgrove's suspicions because, based on his experience, recent registration of a car is another indication that the car might be used for drug trafficking. Further, Hartgrove knew from his experience in narcotics interdiction that Brownsville is an area that experiences heavy drug trafficking. During the time that Hartgrove had checked the car's registration, appellant had slowed from the speed limit of 70 miles per hour to 55 or 60 miles per hour. Hartgrove pulled up next to appellant's car, but appellant refused to acknowledge Hartgrove or make eye contact with him. Hartgrove then pulled back into appellant's "blind spot," whereupon appellant began to look around, apparently trying to discover where Hartgrove had gone. While looking around, appellant swerved his car over the white lines, forcing other cars to make evasive moves to avoid hitting him. Based on the perceived traffic violation created by the rosary beads and appellant's failure to maintain a single lane of traffic, Hartgrove initiated a traffic stop.

Appellant pulled his car to the shoulder of the highway and promptly informed Hartgrove that his driver's license was suspended. Appellant stated that he was driving from

Brownsville to Dallas to retrieve an 18-wheeler for his uncle, who owned a trucking company in Mexico. When Hartgrove asked what would happen to the Passat in Dallas, appellant answered that he was planning to leave the car there. Hartgrove found this explanation unusual, particularly because the Passat was not registered in appellant's name. Hartgrove testified that throughout this exchange, appellant exhibited signs of nervousness: yawning, stretching, wiping his face, putting his hands in his pockets, and fidgeting with his hands. Appellant denied that there were any drugs or money in the car and invited Hartgrove to search the car. Hartgrove found no contraband in the interior of the car, but felt on the undercarriage of the car what he believed to be a "bondo type material" that is commonly used to conceal "trap doors, compartments, [and] welds." At this time, Hartgrove called members of the Williamson County Sheriff's Office Narcotics Unit and a K-9 unit to the scene.

Sergeant Gary Hatson testified that, upon inspecting the exterior of the car, he noticed that the undercarriage of the car was coated with a rubberized material often used by drug traffickers to conceal welding marks and newly constructed undercarriage compartments. In the interior of the car, Hatson found a Nextel Boost prepaid phone. Hatson testified that drug traffickers often use prepaid phones to avoid signing cellular contracts, which require identifying information. Also in the interior of the car was a Mexican energy drink, a Mexican newspaper from that day, and a single key in the ignition. Hatson explained at trial that "drug mules" will often carry only a single key as opposed to a key chain.

After the drug dog gave a positive alert on the vehicle, the detectives took the Passat to a tire shop to inspect it more thoroughly. There, they found a compartment in the undercarriage

3

of the car that contained 18 individually wrapped bundles of methamphetamine. In total, the packages weighed nearly 42 pounds and had a street value of nearly 1.6 million dollars. Hatson testified that this was the largest drug seizure he had ever seen and that, in his experience, a drug distribution network would not allow an unwitting person to transport that amount of methamphetamine.

At the Williamson County Jail, Detective James Knutson interrogated appellant. Appellant seemed "bored," and Knutson "got the impression that [appellant] was pretty much dismissive of the fact that [Knutson] was there questioning him about 42 pounds of methamphetamine in his car." Knutson testified that when he asked appellant about his family, however, appellant got emotional and responded by saying something about "his family being killed." Knutson took this to mean, "If I cooperate with you, you know they're going to kill my family." Throughout the interrogation, appellant's cell phone kept ringing in its direct connect, walkie-talkie feature and Knutson could hear voices in Spanish, although he could not understand what they were saying.

**DISCUSSION**

When reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). This standard requires the reviewing court to defer to the jury's determinations of the credibility and weight of testimony.

*Brooks*, 323 S.W.3d at 899. If the historical facts support conflicting inferences, we must presume that the fact finder resolved such conflicts in favor of the verdict. *See Jackson*, 443 U.S. at 326.

To prove unlawful possession of a controlled substance, the State must show that the defendant (1) exercised care, control, and management over the contraband, and (2) that the accused knew the substance he possessed was contraband. *See Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). Whether the evidence is direct or circumstantial, "it must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous." *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995).

Normally, mere presence at the location where contraband is found is insufficient to establish knowledge. *See Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). However, when a defendant is exerting exclusive control over a vehicle, it may be inferred that he has knowledge of what is in that vehicle and he may be deemed to have possessed any contraband found in it. *See Menchaca v. State*, 901 S.W.2d 640, 652 (Tex. App.—El Paso 1995, pet. ref'd); *Castellano v. State*, 810 S.W.2d 800, 806 (Tex. App.—Austin 1991, no pet.) (citing *United States v. Richardson*, 848 F.2d 509, 513 (5th Cir. 1988)). Although knowledge of the contraband may be inferred from the defendant's exclusive control of the vehicle, some courts have cautioned that sole reliance on the defendant's control of the vehicle should not be used to show knowledge when the contraband is found in a hidden compartment. *See Castellano*, 810 S.W.2d at 806; *United States v. Olivier-Becerril*, 861 F.2d 424, 426-27 (5th Cir. 1988); *United States v. Del Aguila-Reyes*, 722 F.2d 155, 157 (5th Cir. 1983). When contraband is found in a hidden compartment of a vehicle in which the defendant was the sole occupant, courts have often required a showing of "additional

5

factors indicating knowledge such as circumstances indicating a consciousness of guilt on the part of the defendant." *See Menchaca*, 901 S.W.2d at 652.

Here, in addition to appellant's exclusive possession of and control over the car, additional facts existed that support appellant's knowledge of the contraband. First, appellant exhibited nervous behavior while driving and later when speaking with Detective Hartgrove. Also, appellant made somewhat incriminating statements during his interrogation about his family being killed. Appellant asserts that the nervous behavior and incriminating statements stemmed from his fear of going to jail because of his suspended license and that the jury could have reasonably made this inference from the evidence. However, the State is not required to disprove all possible inferences, and it is assumed that the jury resolved all inferences in support of the verdict. *See Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). Further, the jury may have found the inferences urged by the State to be more credible in light of appellant's statement that he was coming from Brownsville and the evidence that he had been in Mexico that day (the Mexican energy drink and Mexican newspaper).

The jury also had before it evidence of the prepaid cell phone, the single key, and Sergeant Hatson's testimony that such items are often used in drug trafficking. Additionally, there was appellant's seeming lack of concern or surprise about the fact that 42 pounds of methamphetamine had been found in his car. A reasonable inference of knowledge of contraband can be made from a lack of concern or surprise over such circumstances. *See Menchaca*, 901 S.W.2d at 652; *Del Aguila-Reyes*, 722 F.2d at 158. Finally, there was the information about the weight and value of the methamphetamine and Sergeant Hatson's testimony that it was unlikely for

6

a drug-distribution network to allow an unwitting person—i.e., one without knowledge of the contraband—to transport such a large amount of drugs. It was therefore reasonable for the jury to infer from this evidence that appellant was not ignorant of the contraband in his car but rather had knowingly possessed the drugs. *See Castellano*, 810 S.W.2d at 806; *Del Aguila-Reyes*, 722 F.2d at 157.

The evidence, taken together, permitted the jury to conclude that appellant knew the vehicle he was driving contained contraband.

## CONCLUSION

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a reasonable jury could have found, beyond a reasonable doubt, that the essential elements of possession—control and knowledge—existed. We overrule appellant's issue and affirm the judgment of conviction.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed

Filed: August 17, 2012

Do Not Publish

7