TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-11-00346-CR






William Joseph Silva, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT

NO. 10-1324-K277, HONORABLE KEN ANDERSON, JUDGE PRESIDING




M E M O R A N D U M O P I N I O N




 A jury convicted appellant, William Joseph Silva, of possessing a controlled
substance, methamphetamine, in an amount of 400 grams or more, with intent to deliver. See Tex.
Health & Safety Code Ann. § 481.112 (West 2010). Following the punishment phase of trial, which
included evidence of appellant's three prior felony convictions, the jury assessed his punishment at
confinement for life in prison. On appeal, appellant asserts in one issue that the evidence was
insufficient to sustain the jury's verdict. Appellant argues that there was insufficient evidence to
prove he knowingly possessed the methamphetamine found in the undercarriage of the car he was
driving. We will affirm the judgment of conviction.


BACKGROUND


 On September 15, 2010, Matt Hartgrove, a detective with the Williamson County
Sheriff's Department, was patrolling Interstate Highway 35 when he observed appellant driving
"nervously" in a 2000 silver Volkswagen Passat. Hartgrove testified that, unlike other drivers on
the road, appellant would not acknowledge him, but instead looked like a "deer-in-the-headlights,"
staring straight ahead and "grasping the steering wheel at ten-and-two." The Passat had rosary beads
and an air freshener hanging from the rearview mirror, and Hartgrove described the car as typical
of the "clean," inconspicuous vehicles often used by drug traffickers. Believing the rosary beads and
the air freshener to be a traffic violation, Hartgrove followed appellant up the highway while
obtaining the car's registration information. The registration search showed that the car had recently
been registered under the name Shellbie Velez in Brownsville, Texas. This information heightened
Hartgrove's suspicions because, based on his experience, recent registration of a car is another
indication that the car might be used for drug trafficking. Further, Hartgrove knew from his
experience in narcotics interdiction that Brownsville is an area that experiences heavy drug
trafficking. During the time that Hartgrove had checked the car's registration, appellant had slowed
from the speed limit of 70 miles per hour to 55 or 60 miles per hour. Hartgrove pulled up next to
appellant's car, but appellant refused to acknowledge Hartgrove or make eye contact with him. 
Hartgrove then pulled back into appellant's "blind spot," whereupon appellant began to look around,
apparently trying to discover where Hartgrove had gone. While looking around, appellant swerved
his car over the white lines, forcing other cars to make evasive moves to avoid hitting him. Based
on the perceived traffic violation created by the rosary beads and appellant's failure to maintain a
single lane of traffic, Hartgrove initiated a traffic stop.

 Appellant pulled his car to the shoulder of the highway and promptly informed
Hartgrove that his driver's license was suspended. Appellant stated that he was driving from
Brownsville to Dallas to retrieve an 18-wheeler for his uncle, who owned a trucking company in
Mexico. When Hartgrove asked what would happen to the Passat in Dallas, appellant answered that
he was planning to leave the car there. Hartgrove found this explanation unusual, particularly
because the Passat was not registered in appellant's name. Hartgrove testified that throughout this
exchange, appellant exhibited signs of nervousness: yawning, stretching, wiping his face, putting
his hands in his pockets, and fidgeting with his hands. Appellant denied that there were any drugs
or money in the car and invited Hartgrove to search the car. Hartgrove found no contraband in the
interior of the car, but felt on the undercarriage of the car what he believed to be a "bondo type
material" that is commonly used to conceal "trap doors, compartments, [and] welds." At this time,
Hartgrove called members of the Williamson County Sheriff's Office Narcotics Unit and a K-9 unit
to the scene.

 Sergeant Gary Hatson testified that, upon inspecting the exterior of the car, he noticed
that the undercarriage of the car was coated with a rubberized material often used by drug traffickers
to conceal welding marks and newly constructed undercarriage compartments. In the interior of the
car, Hatson found a Nextel Boost prepaid phone. Hatson testified that drug traffickers often use
prepaid phones to avoid signing cellular contracts, which require identifying information. Also in
the interior of the car was a Mexican energy drink, a Mexican newspaper from that day, and a single
key in the ignition. Hatson explained at trial that "drug mules" will often carry only a single key as
opposed to a key chain. 

 After the drug dog gave a positive alert on the vehicle, the detectives took the Passat
to a tire shop to inspect it more thoroughly. There, they found a compartment in the undercarriage
of the car that contained 18 individually wrapped bundles of methamphetamine. In total, the
packages weighed nearly 42 pounds and had a street value of nearly 1.6 million dollars. Hatson
testified that this was the largest drug seizure he had ever seen and that, in his experience, a
drug distribution network would not allow an unwitting person to transport that amount
of methamphetamine.

 At the Williamson County Jail, Detective James Knutson interrogated appellant. 
Appellant seemed "bored," and Knutson "got the impression that [appellant] was pretty much
dismissive of the fact that [Knutson] was there questioning him about 42 pounds of
methamphetamine in his car." Knutson testified that when he asked appellant about his family,
however, appellant got emotional and responded by saying something about "his family being
killed." Knutson took this to mean, "If I cooperate with you, you know they're going to kill my
family." Throughout the interrogation, appellant's cell phone kept ringing in its direct connect,
walkie-talkie feature and Knutson could hear voices in Spanish, although he could not understand
what they were saying.


DISCUSSION



 When reviewing the sufficiency of the evidence, we view the evidence in the light
most favorable to the verdict and determine whether any rational fact finder could have found the
essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319
(1979); Brooks v. State, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). This standard requires the
reviewing court to defer to the jury's determinations of the credibility and weight of testimony. 
Brooks, 323 S.W.3d at 899. If the historical facts support conflicting inferences, we must presume
that the fact finder resolved such conflicts in favor of the verdict. See Jackson, 443 U.S. at 326.

 To prove unlawful possession of a controlled substance, the State must show that the
defendant (1) exercised care, control, and management over the contraband, and (2) that the accused
knew the substance he possessed was contraband. See Poindexter v. State, 153 S.W.3d 402, 405
(Tex. Crim. App. 2005). Whether the evidence is direct or circumstantial, "it must establish, to the
requisite level of confidence, that the accused's connection with the drug was more than just
fortuitous." Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995).

 Normally, mere presence at the location where contraband is found is insufficient to
establish knowledge. See Evans v. State, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). However,
when a defendant is exerting exclusive control over a vehicle, it may be inferred that he has
knowledge of what is in that vehicle and he may be deemed to have possessed any contraband found
in it. See Menchaca v. State, 901 S.W.2d 640, 652 (Tex. App.--El Paso 1995, pet. ref'd);
Castellano v. State, 810 S.W.2d 800, 806 (Tex. App.--Austin 1991, no pet.) (citing United States
v. Richardson, 848 F.2d 509, 513 (5th Cir. 1988)). Although knowledge of the contraband may be
inferred from the defendant's exclusive control of the vehicle, some courts have cautioned that sole
reliance on the defendant's control of the vehicle should not be used to show knowledge when the
contraband is found in a hidden compartment. See Castellano, 810 S.W.2d at 806; United States
v. Olivier-Becerril, 861 F.2d 424, 426-27 (5th Cir. 1988); United States v. Del Aguila-Reyes,
722 F.2d 155, 157 (5th Cir. 1983). When contraband is found in a hidden compartment of a vehicle
in which the defendant was the sole occupant, courts have often required a showing of "additional
factors indicating knowledge such as circumstances indicating a consciousness of guilt on the part
of the defendant." See Menchaca, 901 S.W.2d at 652.

 Here, in addition to appellant's exclusive possession of and control over the car,
additional facts existed that support appellant's knowledge of the contraband. First, appellant
exhibited nervous behavior while driving and later when speaking with Detective Hartgrove. Also,
appellant made somewhat incriminating statements during his interrogation about his family being
killed. Appellant asserts that the nervous behavior and incriminating statements stemmed from his
fear of going to jail because of his suspended license and that the jury could have reasonably made
this inference from the evidence. However, the State is not required to disprove all possible
inferences, and it is assumed that the jury resolved all inferences in support of the verdict. See Wise
v. State, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). Further, the jury may have found the
inferences urged by the State to be more credible in light of appellant's statement that he was coming
from Brownsville and the evidence that he had been in Mexico that day (the Mexican energy drink
and Mexican newspaper).

 The jury also had before it evidence of the prepaid cell phone, the single key, and
Sergeant Hatson's testimony that such items are often used in drug trafficking. Additionally,
there was appellant's seeming lack of concern or surprise about the fact that 42 pounds
of methamphetamine had been found in his car. A reasonable inference of knowledge of
contraband can be made from a lack of concern or surprise over such circumstances. See Menchaca,
901 S.W.2d at 652; Del Aguila-Reyes, 722 F.2d at 158. Finally, there was the information about the
weight and value of the methamphetamine and Sergeant Hatson's testimony that it was unlikely for
a drug-distribution network to allow an unwitting person--i.e., one without knowledge of the
contraband--to transport such a large amount of drugs. It was therefore reasonable for the jury to
infer from this evidence that appellant was not ignorant of the contraband in his car but rather had
knowingly possessed the drugs. See Castellano, 810 S.W.2d at 806; Del Aguila-Reyes, 722 F.2d
at 157.

 The evidence, taken together, permitted the jury to conclude that appellant knew the
vehicle he was driving contained contraband.


CONCLUSION


 Viewing the evidence in the light most favorable to the jury's verdict, we conclude
that a reasonable jury could have found, beyond a reasonable doubt, that the essential elements of
possession--control and knowledge--existed. We overrule appellant's issue and affirm the
judgment of conviction.


 _____________________________________________

 J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed

Filed: August 17, 2012

Do Not Publish