PD-1565-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/4/2015 12:58:04 PM
Accepted 12/4/2015 1:52:52 PM
ABEL ACOSTA
CLERK

CAUSE NO. PD- _____-15

IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS

From Cause No. 12-15-00073-CR
12th Court of Appeals, Tyler, Texas

---

THE STATE OF TEXAS,

PETITIONER

V.

YAGO FOUNTAIN,

RESPONDENT

---

## STATE'S PETITION FOR DISCRETIONARY REVIEW

---

D. MATT BINGHAM
Criminal District Attorney
Smith County, Texas

MICHAEL J. WEST
Assistant Criminal District Attorney
Bar I.D. No. 21203300

Smith County Courthouse
100 N. Broadway
Tyler, Texas 75702
ph:  (903) 590-1720
fax: (903) 590-1719

FILED IN
COURT OF CRIMINAL APPEALS

December 4, 2015

ABEL ACOSTA, CLERK

**Identity of Parties**

**Judge:**

Honorable Christie Kennedy
114th District Court
Smith County, Texas

**Trial Counsel:**

Mr. Thad Davidson
Attorney at Law
329 S. Fanin
Tyler, Texas 75702

Mr. Jacob Putnam
Asst. Dist. Attorney
104 N. Broadway, 4th flr.
Tyler, Texas 75702

**Appellate Counsel:**

Mr. Austin Jackson
Attorney at Law
112 East Line, Ste. 310
Tyler, Texas 75702

Mr. Michael J. West
Asst. Dist. Attorney
104 N. Broadway, 4th flr.
Tyler, Texas 75702

# TABLE OF CONTENTS

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    iii

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . .    1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2

STATEMENT OF PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2

QUESTION FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3

> **When the evidence supports an inference that a defendant is in knowing possession of contraband is it unreasonable for a jury to further conclude that the same evidence shows that the defendant also exercised care, custody and control over that contraband?**

PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    14

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    14

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    15

APPENDIX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    16

# INDEX OF AUTHORITIES

**STATUTES AND RULES** **PAGE**

**Tex. R. App. P.**

Rule 68.2 (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

**FEDERAL CASES** **PAGE**

*Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781,
61 L. Ed. 2d 560 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

**STATE CASES** **PAGE**

*Brooks v. State*, 323 S.W.3d 893
(Tex.Crim.App. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11, 12

*Brown v. State*, 911 S.W.2d 744
(Tex.Crim.App. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

*Dewberry v. State*, 4 S.W.3d 735
(Tex.Crim.App. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12, 13

*Evans v. State*, 202 S.W.3d 158
(Tex.Crim.App. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   passim

*Fountain v.  State*, No. 12-15-00073-CR, 2015 Tex.App. LEXIS 10533
(Tex.App. - Tyler Oct. 14, 2015)
(not designated for publication) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   passim

*Hernandez v. State*, 538 S.W.2d 127
(Tex.Crim.App. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

*Hurtado v. State*, 881 S.W.2d 738
(Tex.App. - Houston [1ˢᵗ Dist.] 1994, *pet. ref'd*) . . . . . . . . . . . . . . . . . . . .   8

**STATE CASES (CONT.)**                                                           **PAGE**

*James v. State*, 264 S.W.3d 215
(Tex. App. - Houston [1st Dist.] 2008, *pet. ref'd*) . . . . . . . . . . . . . . . . . . .    8

*Johnson v. State*, 871 S.W.2d 183
(Tex.Crim.App. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11

*O'Neal v. State*, 111 Tex. Crim. 315
(Tex.Crim.App. 1929) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11

*Poindexter v. State*, 153 S.W.3d 402
(Tex.Crim.App. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3

*Siroky v. State*, 653 S.W.2d 476
(Tex.App. - Tyler 1983, *pet. ref'd*) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3

CAUSE NO. PD-_____-15

IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS

From Cause No. 12-15-00073-CR
12th Court of Appeals, Tyler, Texas

---

THE STATE OF TEXAS,

PETITIONER

V.

YAGO FOUNTAIN,

RESPONDENT

---

**TO THE HONORABLE COURT OF CRIMINAL APPEALS**:

Comes now the State of Texas, by and through the undersigned Assistant Criminal District Attorney, and respectfully urges this Court to grant discretionary review in the above-numbered cause.

**STATEMENT REGARDING ORAL ARGUMENT**

The disposition of this case will likely inject substantial confusion into the appellate review of drug possession cases where the Court below held that a jury

1

could find the evidence sufficient to show that Respondent was in knowing possession of contraband and yet the same evidence failed to establish that he also exercised care, custody or control over that contraband. The record appears sufficient for this Court to review the issue raised by this petition. As such, it may not be necessary for the Court to hear oral argument in deciding whether to grant review.

## STATEMENT OF THE CASE

Respondent, Yago Fountain, was indicted in Cause No. 114-0896-14, filed in the 114th District Court of Smith County, Texas, with the offense of Possession of Marijuana. (CR: 1). On March 17, 2015, Respondent, with counsel, pleaded not guilty to the charge contained in the indictment, a jury was selected and the case was tried. After hearing the evidence and argument of counsel, the jury found Respondent guilty as charged in the indictment. (RR 11: 231).

During a short punishment hearing, the State proved that Respondent had a prior federal conviction for distributing cocaine base. (RR 11: 241). He served close to 10 years in the federal penitentiary and may have been on federal parole when he was arrested in this case. (RR 11: 266). The jury subsequently assessed the maximum sentence of 10 years and a $10,000 fine. (RR 11: 278).

On October 14, 2015, the 12th Court of Appeals issued its opinion. The Court agreed with Respondent's sole point of error that the evidence was insufficient at

2

trial to show that he possessed marijuana. *Fountain v. State*, No. 12-15-00073-CR, 2015 Tex.App. LEXIS 10533 (Tex.App. - Tyler Oct. 14, 2015) (not designated for publication). The State filed a timely motion for rehearing *en banc* which was subsequently overruled on November 10, 2015.

### STATEMENT OF THE PROCEDURAL HISTORY

The decision of the 12th Court of Appeals overruling the State's motion for rehearing was delivered on November 10, 2015. This petition review will be timely filed if postmarked on or before December 10, 2015. *See* TEX. R. APP. P. 68.2 (a).

### QUESTION FOR REVIEW

**I.     When the evidence supports an inference that a defendant is in knowing possession of contraband is it unreasonable for a jury to further conclude that the same evidence shows that the defendant also exercised care, custody and control over that contraband?**

**A.**     The law provides that "in a possession of a controlled substance prosecution, 'the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband.'" *Evans v. State*, 202 S.W.3d 158, 161 (Tex.Crim.App. 2006) *quoting Poindexter v. State*, 153 S.W.3d 402, 405 (Tex.Crim.App. 2005). "Possession need not be exclusive, however, and a showing of joint possession with another is sufficient." *Siroky v. State*, 653 S.W.2d 476, 479 (Tex.App. - Tyler 1983, *pet. ref'd*). Direct or

3

circumstantial evidence may be used to prove knowing possession of a controlled substance. *Brown v. State*, 911 S.W.2d 744, 747 (Tex.Crim.App. 1995). As this Court explained in *Evans*:

> Mere presence at the location where drugs are found is thus insufficient, by itself, to establish actual care, custody, or control of those drugs. However, presence or proximity, when combined with other evidence, either direct or circumstantial (e.g.," links"), may well be sufficient to establish that element beyond a reasonable doubt. (footnote omitted).
>
> *Evans*, 202 S.W.3d at 162.

The Court also provided a nonexclusive list of possible links that Texas courts had recognized as sufficient, "either singly or in combination, to establish a person's possession of contraband": (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was

4

found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Id*. at 162 n.12.

**B.**     The 12th Court has accurately set out the facts of the case in its opinion and stated them as follows:

> On the night of September 13, 2013, Trooper Chad Martin conducted a traffic stop on a 2005 Chevrolet Suburban for a defective license plate lamp. Lapatrick Mitchell was the driver, and Appellant was the passenger.
>
> Mitchell had a Louisiana driver's license and Appellant had no identification. Mitchell told Trooper Martin that he and Appellant went to Dallas from Louisiana and were on their way home. Mitchell first said that they went to get a tire fixed. Trooper Martin testified that he thought it was "odd" to drive from Louisiana to Dallas to fix a tire because the drive takes approximately three hours. But Mitchell also told Trooper Martin that they took Appellant's aunt to Dallas, and ate at two restaurants. Mitchell did not describe any other activities that they engaged in, ***but the record reflects that Mitchell and Appellant were together the entire time***.
>
> Trooper Martin's conversation with Mitchell began inside the Suburban, but ultimately moved outside. Appellant remained inside the vehicle while Trooper Martin spoke to Mitchell. But prior to Mitchell's exiting the vehicle, Appellant's demeanor was, according to the trooper, "very odd" for a passenger.
>
> Trooper Martin testified that when he first approached the driver's side of the vehicle, Appellant had unbuckled his seat belt and was looking at him like a "deer in the headlight[s]." Appellant's demeanor was so uncommon that one of Trooper Martin's first questions to Appellant was whether he "plan[ned] on running." Trooper Martin had more extensive contact with Appellant after Mitchell exited the vehicle. The trooper testified that during their second contact, Appellant was breathing

rapidly and had a "heightened sense of nervousness that was not normal." In addition, Appellant's hands were "visibly trembling." Because Appellant's nervousness and trembling were so pronounced, Trooper Martin inquired whether Appellant had any warrants, but Appellant denied that he did.

When Trooper Martin questioned Appellant about his and Mitchell's trip to Dallas, Appellant could not tell him what time they left for Dallas that day. However, he advised Trooper Martin that they went to Dallas to "get" a tire and to drive Mitchell's aunt to Dallas. The trooper testified that Appellant's explanation was inconsistent with Mitchell's. But he recounted that when he told Appellant that Mitchell said it was Appellant's aunt, Appellant disagreed, and then said, "Well, it's both of our aunts, really."

The evidence showed that neither Mitchell nor Appellant owned the Suburban. Trooper Martin testified that third party vehicles are commonly used to transport illegal drugs for long distances. He further testified that he asked Mitchell why he was driving someone else's vehicle. According to Mitchell, the Suburban was more efficient than his vehicle. Ultimately, Trooper Martin obtained Mitchell's consent to search the vehicle.

Prior to his search, Trooper Martin did not notice any odor of marijuana. However, when he opened one of the back compartments of the Suburban, he found a "brand new roll of cellophane" and two cans of axle grease. Trooper Martin testified that the discovery of these items was significant because cellophane is commonly used to wrap illegal drugs and axle grease is commonly used to mask their odor. But, despite this discovery, Trooper Martin did not find any marijuana or other [*9] contraband inside the passenger compartment of the Suburban. It was not until he looked underneath the driver's side dashboard that he "got a big hint of raw marijuana smell - odor." Trooper Martin then opened the hood and found wrapped marijuana bundles inside the engine compartment.

6

The video from Trooper Martin's patrol car captures the entire interaction between Trooper Martin, Mitchell, and Appellant during the traffic stop. The video is consistent with Trooper Martin's testimony. It shows that Trooper Martin remarked to Mitchell about Appellant's nervousness and reflects that Trooper Martin told Mitchell that Appellant's nervousness was making him nervous. The video also shows that when the trooper returned from the front of the vehicle and ordered both men to get on the ground, neither Mitchell nor Appellant acted surprised.

The marijuana had a net weight of 8.59 pounds. Trooper Martin's testimony confirmed that its street value was worth "quite a bit of money." He testified that when he questioned Mitchell and Appellant about the marijuana, Mitchell remained silent, and Appellant "just said it wasn't his." (emphasis supplied).

*Fountain*, 2015 Tex.App. LEXIS 10533 at *6-9.

**C.**     In its opinion, the 12th Court expressly found that the State's affirmative link evidence, "supported an inference that [Respondent] knew marijuana was inside the engine compartment." *Fountain*, 2015 Tex.App. LEXIS 10533 at *11. However, the Court thereafter disagreed with the jury's verdict that the same evidence also established that Respondent had "exercised care, custody, control or management over a substance." *Fountain*, 2015 Tex.App. LEXIS 10533 at *15.

In discussing this lack of evidence on Respondent's care, custody and control over the contraband, the 12th Court first decided that "[t]he borrowed Suburban, presence on Interstate 20, Mitchell's and [Respondent]'s conflicting statements, and [Respondent]'s nervousness and lack of surprise are links showing [Respondent]'s

7

knowledge of the contraband inside the Suburban's engine compartment." *Fountain*, 2015 Tex.App. LEXIS 10533 at *23.

However, after agreeing with the jury's reasonable conclusion that Respondent was aware that over eight pounds of marijuana was concealed under the hood of the Suburban, the Court then concluded that: "there is no circumstantial evidence to show that Respondent exercised care, custody, control, or management over the marijuana" as "he was a passenger, he was not under the influence of marijuana, he made no statements linking himself to the marijuana, he possessed no other contraband or paraphernalia on his person, he made no incriminating statements, and law enforcement did not witness a drug transaction in Appellant's presence." *Id*.

This holding is in conflict with the well-established principal that provides that; "the absence of the [ ] facts and circumstances is not evidence of appellant's innocence to be weighed against evidence tending to connect appellant to the marihuana." *Hernandez v. State*, 538 S.W.2d 127, 131 (Tex.Crim.App. 1976). *See also James v. State*, 264 S.W.3d 215, 219 (Tex. App. - Houston [1st Dist.] 2008, *pet. ref'd*) ("The absence of various affirmative links does not constitute evidence of innocence to be weighed against the affirmative links present"); *Hurtado v. State*, 881 S.W.2d 738, 745 (Tex.App. - Houston [1st Dist.] 1994, *pet. ref'd*) ("Because our review is no longer based on whether the State disproves reasonable alternatives to

a defendant's guilt, we need not consider affirmative link factors that are absent from the evidence.").

**D.** In reaching its conclusion regarding a lack of evidence on care, custody and control, the 12th Court did not discuss the impact of evidence that was heard by the jury showing that Respondent jointly exercised control over the marijuana.

First, it was undisputed at trial that there was no evidence that Respondent and Mitchell were ever apart from each other during the entire time they were on their one-day trip from Louisiana to Dallas and back. (RR 11: 52, 78, 158). And, when Trooper Martin pulled the hood release latch to have a look in the engine compartment, Respondent and Mitchell "seem to be looking at each other and having a conversation as you're popping that hood and walking up there." (RR 11: 154).

If the record shows that the two men never separated, then logically Respondent *must have been* with Mitchell when they both took custody of the marijuana. And, given that there is absolutely no evidence that anyone else besides Mitchell or Respondent could have put the marijuana where it was found, *how else did it get there*?

The 12th Court found that the jury could reasonably infer from the evidence that Respondent knew that over eight pounds of marijuana was under the hood. *Fountain*, 2015 Tex.App. LEXIS 10533 at *11, *23. The State respectfully submits that it was

9

just as reasonable for the jury to also infer Respondent he was equally in care custody and control of the contraband, or even that it was Respondent who hid marijuana.

Additionally, when Trooper Martin first approached the Suburban, Respondent had already unbuckled his seatbelt and appeared to the trooper to be contemplating an escape attempt:

Q.	You said he unbuckled his seat belt. That was unusual to you?

A.	He just had this blank -- I don't want to say scared, but it was a wide-eyed look to him. And I immediately asked him if he was okay. And, you know, I think I even said, you know, "You plan on running? What's" -- you know, I made an issue out of it because that's not normal. Obviously, I'm up there by myself, and there's -- I see this vehicle's occupied by two people, and I just want to make sure, you know. In my mind, I'm wondering what's going through this gentleman's mind. You know, why is he acting like this?

(RR 11: 45-46).

Mitchell likewise appeared to be contemplating a quick getaway as he left his door open when Trooper Martin asked him to step out of the vehicle:

Q.	Okay. Did you actually show him the defective license plate lamp?

A.	Yes, sir. When he stepped out, he actually left his driver's side door open in traffic, so I actually had to tell him, "Hey, go close your door," you know. Again, that's not normal either. I mean, most people, when you have them step out, they immediately close their door. So I had to tell him.

(RR 11: 48-49).

10

This Court has long considered that flight can be strong evidence of guilt. *See e.g. O'Neal v. State*, 111 Tex. Crim. 315, 318 (Tex.Crim.App. 1929) ("Flight has usually been regarded as a criminative fact. 'The guilty flee where no man pursueth.'").

If the jury concluded from the evidence that both Mitchell and Respondent were exercising joint care, custody and control over the marijuana that the 12th Court found Respondent knew was hidden in the vehicle - why was that not a reasonable deduction? "It is the logical force of the circumstantial evidence, not the number of links, that supports a jury's verdict." *Evans*, 202 S.W.3d at 166.

The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 315-19, 99 S.Ct. 2781, 2786-88, 61 L. Ed. 2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex.Crim.App. 2010); *see also Johnson v. State*, 871 S.W.2d 183, 186 (Tex.Crim.App. 1993). The evidence in this case must be examined in "the light most favorable to the verdict." *Jackson*, 443 U.S. at 319; *Johnson*, 871 S.W.2d at 186. This standard gives full play to the sole responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts. *Jackson*, 443 U.S. at 319.

11

Under the applicable standard, the 12th Court "may not sit as a thirteenth juror and substitute [its] judgment for that of the fact finder by reevaluating the weight and credibility of the evidence." *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App. 1999); *see also Brooks*, 323 S.W.3d at 899. Instead, the Court should defer to the fact finder's resolution of conflicting evidence unless that resolution simply is not rational. *Brooks*, 323 S.W.3d at 899-900.

Here, the 12th Court concluded from the record that, "unlike *Blackman*, there is no circumstantial evidence in this case to show that Respondent exercised care, custody, control, or management over the marijuana - he was a passenger, he was not under the influence of marijuana, he made no statements linking himself to the marijuana, he possessed no other contraband or paraphernalia on his person, he made no incriminating statements, and law enforcement did not witness a drug transaction in Appellant's presence." *Fountain*, 2015 Tex. App. LEXIS 10533 at *23.

However, each of these missing links are equally absent from Mitchell as well - except for the single fact that he was sitting in the driver's seat. Similarly, every one of the affirmative links that were recognized by the 12th Court as showing Respondent's knowing possession would also apply to Mitchell.

Does this mean that the 12th Court would also absolve Mitchell of exercising care, custody and control over the marijuana hidden under the hood? Is it "rational"

12

for the 12th Court to determine that, while the evidence sufficiently established that both men knew the marijuana was hidden in their vehicle, *neither* of them ever exercised care, control or custody over it? Or that only Mitchell did simply because of where he was seated in the vehicle when it was stopped? Particularly, in light of the fact that the record shows the two men were together for the entire trip, and also that nobody else could have hidden the marijuana under the hood.

In the State's view, it is plainly irrational that the evidence could be found sufficient to support that two individuals knowingly transported over eight pounds of marijuana from Dallas to Louisiana, and yet failed to establish that neither exercised care, custody or control over the contraband being transported. The marijuana certainly did not hide or transport itself. Since the record supports that they must have been together when it was hidden, and that they both knew it was in the vehicle, they both must have also taken part in its transport and thus its possession.

## E.    Conclusion

Consequently, the jury's verdict that Respondent was guilty as charged was both reasonable and founded upon sufficient evidence. Most respectfully, when the 12th Court found otherwise, it improperly substituted its judgment for that of the fact-finders' and reached a conclusion in conflict with the law. *See Dewberry*, 4 S.W.3d at 740.

13

**PRAYER**

WHEREFORE, the State of Texas prays that the Court of Criminal Appeals grant review of the issue presented. The State prays that the case be set for submission, and that after submission, that this Court reverse the holding of the 12th Court of Appeals, and affirm the conviction in this case.

Respectfully submitted,

D. MATT BINGHAM
Smith County Criminal District Attorney


/s/   Michael J. West
Michael J. West
Asst. Criminal District Attorney
Bar I.D. No. 21203300
100 N. Broadway, 4th Fl.
Tyler, Texas 75702
(903) 590-1720
(903) 590-1719 (fax)


**CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that the pertinent sections of the State's Petition for Discretionary Review in the above numbered cause contain 2,685 words, an amount which complies with Texas Rule of Appellate Procedure 9.4 (i).

/s/   Michael J. West
Michael J. West
Asst. Criminal District Attorney
Bar I.D. No. 21203300

14

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this <u>4th</u> day of <u>December</u>, 2015, the following have been completed:

(1) The original of the State's Petition for Discretionary Review in the above numbered cause has been electronically filed with the Clerk of the Court of Criminal Appeals.

(2) Eleven legible copies of the State's Petition for Discretionary Review in the above numbered cause have been sent via to U.S. Mail to the Clerk of the Court of Criminal Appeals.

(3) A legible copy of the State's Petition for Discretionary Review in the above numbered cause has been sent by U.S. Mail to:

Hon. Lisa C. McMinn                    Mr. Austin Jackson
State Prosecuting Attorney             Attorney at Law
P.O. Box 12405                         112 E. Line, Ste. 310
Austin, Texas 78711                    Tyler, Texas 75702


<u>/s/   Michael J. West</u>
Michael J. West
Asst. Criminal District Attorney
Bar I.D. No. 21203300
100 N. Broadway, 4th Fl.
Tyler, Texas 75702
(903) 590-1720
(903) 590-1719 (fax)

15

**APPENDIX**

*Fountain v. State*, No. 12-15-00073-CR, 2015 Tex.App. LEXIS 10533 (Tex.App. - Tyler Oct. 14, 2015) (not designated for publication)

16

YAGO SANTAIN FOUNTAIN, APPELLANT
v.
THE STATE OF TEXAS, APPELLEE
NO. 12-15-00073-CR

COURT OF APPEALS OF TEXAS,  TWELFTH DISTRICT, TYLER

2015 Tex. App. LEXIS 10533

October 14, 2015, Opinion Delivered

**NOTICE**: PLEASE CONSULT THE TEXAS RULES OF APPELLATE PROCEDURE FOR CITATION OF UNPUBLISHED OPINIONS.

**PRIOR HISTORY**:  [*1] Appeal from the 114th District Court of Smith County, Texas. (Tr.Ct.No. 114-0896-14).

**CASE SUMMARY**

**OVERVIEW: HOLDINGS**: [1]-The evidence was insufficient to sustain defendant's conviction for possession of marijuana under Tex. Health & Safety Code Ann. § 481.121 because there was no circumstantial evidence to show that defendant exercised care, custody, control, or management over the marijuana—he was a passenger, he was not under the influence of marijuana, he made no statements linking himself to the marijuana, he possessed no other contraband or paraphernalia on his person, he made no incriminating statements, and law enforcement did not witness a drug transaction in defendant's presence.

**OUTCOME**: The judgment was reversed and an acquittal was rendered.

**CORE TERMS**: marijuana, contraband, trooper, passenger, inside, driver, custody, cocaine, narcotic, compartment, nervousness, possessed, evidence showed, traffickers, proximity, engine, odor, pounds, van, reasonable doubt, consciousness of guilt, circumstantial, trunk, tire, criminal appeals, traffic stop, incriminating, cellophane, traveling, arrested

LexisNexis® Headnotes Hide

Evidence > Inferences & Presumptions > Inferences Retrieve All Headnotes and Additional Cases on this Topic

Evidence > Inferences & Presumptions > Presumptions > General Overview Retrieve All

Headnotes and Additional Cases on this Topic

Criminal Law & Procedure > Appeals > Standards of Review > Substantial Evidence > Sufficiency of Evidence Retrieve All Headnotes and Additional Cases on this Topic

Criminal Law & Procedure > Juries & Jurors > Province of Court & Jury > Credibility of Witnesses Retrieve All Headnotes and Additional Cases on this Topic

Criminal Law & Procedure > Juries & Jurors > Province of Court & Jury > Weight of the Evidence Retrieve All Headnotes and Additional Cases on this Topic

**HN1**. When sufficiency of the evidence is challenged on appeal, an appellate court views all of the evidence in the light most favorable to the verdict to decide whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Under this standard, the jury is the sole judge of the witnesses' credibility and the weight of their testimony. A jury is permitted to draw multiple reasonable inferences, but it is not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions. A "presumption" is a legal inference that a fact exists if the facts giving rise to the presumption are proven beyond a reasonable doubt. An "inference" is a conclusion reached by considering other facts and deducing a logical consequence from them. "Speculation" is mere theorizing or guessing about the possible meaning of facts and evidence presented. A conclusion reached by speculation may not be completely unreasonable, but it is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt. More Like This Headnote

Evidence > Inferences & Presumptions > Inferences Retrieve All Headnotes and Additional Cases on this Topic

Evidence > Procedural Considerations > Burdens of Proof > Proof Beyond Reasonable Doubt Retrieve All Headnotes and Additional Cases on this Topic

Criminal Law & Procedure > Appeals > Standards of Review > Substantial Evidence > Sufficiency of Evidence Retrieve All Headnotes and Additional Cases on this Topic

Criminal Law & Procedure > Jury Instructions > Particular Instructions > Elements of the Offense Retrieve All Headnotes and Additional Cases on this Topic

Evidence > Inferences & Presumptions > Presumptions > General Overview Retrieve All Headnotes and Additional Cases on this Topic

**HN2**. When an appellate court applies the Jackson v. Virginia standard of review, it determines whether the necessary inferences are reasonable based upon the combined and

cumulative force of all the evidence when viewed in the light most favorable to the verdict. When the record supports conflicting inferences, the appellate court must presume that the fact finder resolved the conflicts in favor of the prosecution and defer to that determination. In determining whether the State has met its burden of proving the defendant guilty beyond a reasonable doubt, the appellate court compares the elements of the crime as defined by a hypothetically correct jury charge to the evidence adduced at trial. A hypothetically correct jury charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden or restrict its theories of liability, and adequately describes the particular offense for which the defendant was tried. More Like This Headnote

Evidence > Relevance > Circumstantial & Direct Evidence Retrieve All Headnotes and Additional Cases on this Topic

Criminal Law & Procedure > Criminal Offenses > Controlled Substances > Possession > Simple Possession > Elements Retrieve All Headnotes and Additional Cases on this Topic

Criminal Law & Procedure > Trials > Burdens of Proof > Prosecution Retrieve All Headnotes and Additional Cases on this Topic

**HN3**. To prove unlawful possession, the State must prove that: (1) the defendant exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband. Whether direct or circumstantial, the evidence must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous. This is known as the "affirmative links" rule, which protects the innocent bystander from conviction merely because of his fortuitous proximity to someone else's drugs. Thus, when the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that he had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband. Evidence of drug possession is judged by the same standard as all other evidence. More Like This Headnote

Criminal Law & Procedure > Criminal Offenses > Controlled Substances > Possession > Simple Possession > Elements Retrieve All Headnotes and Additional Cases on this Topic

Evidence > Procedural Considerations > Circumstantial & Direct Evidence Retrieve All Headnotes and Additional Cases on this Topic

Criminal Law & Procedure > Appeals > Standards of Review > Substantial Evidence > Sufficiency of Evidence Retrieve All Headnotes and Additional Cases on this Topic

Evidence > Procedural Considerations > Weight & Sufficiency Retrieve All Headnotes and Additional Cases on this Topic

**HN4**. The Texas Court of Criminal Appeals has recognized that some factors which may circumstantially establish the legal sufficiency of the evidence to prove a knowing possession include the following: (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotics; (4) whether the defendant was under the influence of narcotics; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. The number of factors is not as important as the logical force the factors have in establishing the elements of the offense. Therefore, each case must be examined according to its own facts on a case by case basis.  More Like This Headnote

Criminal Law & Procedure > Criminal Offenses > Controlled Substances > Possession > Simple Possession > General Overview Retrieve All Headnotes and Additional Cases on this Topic

**HN5**. In the context of a drug possession case, consciousness of guilt is one of the enumerated factors shown to link an accused to contraband. Conflicting statements about relevant matters, extreme nervousness, and lack of concern or surprise upon the discovery of contraband indicate consciousness of guilt. Nervousness is a tenuous link to contraband because most people are somewhat nervous when confronted by a police officer.  More Like This Headnote

Criminal Law & Procedure > Criminal Offenses > Controlled Substances > Possession > Simple Possession > General Overview Retrieve All Headnotes and Additional Cases on this Topic

**HN6**. The mere presence of an accused at a place where contraband is being possessed or used by others, and even the accused's knowledge of an offense by others, does not constitute joint possession of the contraband.  More Like This Headnote

Criminal Law & Procedure > Criminal Offenses > Controlled Substances > Possession > Simple Possession > Elements Retrieve All Headnotes and Additional Cases on this Topic

Evidence > Procedural Considerations > Burdens of Proof > Proof Beyond Reasonable Doubt Retrieve All Headnotes and Additional Cases on this Topic

Evidence > Relevance > Circumstantial & Direct Evidence Retrieve All Headnotes and

Additional Cases on this Topic

Evidence > Procedural Considerations > Weight & Sufficiency Retrieve All Headnotes and Additional Cases on this Topic

**HN7**. It is well established that mere presence at the location where drugs are found is insufficient, by itself, to establish actual care, custody, control, or management of those drugs. Tex. Health & Safety Code Ann. § 481.002(38) (Supp. 2014). But, presence or proximity, when combined with other evidence, either direct or circumstantial, may well be sufficient to establish that element beyond a reasonable doubt.  More Like This Headnote

Criminal Law & Procedure > Criminal Offenses > Controlled Substances > Possession > Simple Possession > General Overview Retrieve All Headnotes and Additional Cases on this Topic

**HN8**. In the context of drug possession, where the contraband is hidden, courts require additional facts and circumstances to prove the knowledge element: consciousness of guilt, conflicting statements, or an implausible account of events.  More Like This Headnote

Criminal Law & Procedure > Criminal Offenses > Controlled Substances > Possession > Simple Possession > General Overview Retrieve All Headnotes and Additional Cases on this Topic

**HN9.** In the context of drug possession, the term "conveniently accessible" means that the contraband must be within the close vicinity of the accused and easily accessible while in the vehicle so as to suggest that the accused had knowledge of the contraband and exercised control over it.  More Like This Headnote

Criminal Law & Procedure > Criminal Offenses > Controlled Substances > Possession > Simple Possession > General Overview Retrieve All Headnotes and Additional Cases on this Topic

**HN10**. In the context of drug possession, the absence of links does not constitute evidence of innocence.  More Like This Headnote

**COUNSEL**: For Appellant: Austin R. Jackson For State: Aaron Rediker.

**JUDGES**: Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.

**OPINION BY: GREG NEELEY**

**MEMORANDUM OPINION**

Yago Santain Fountain appeals his conviction for possession of marijuana. He raises one issue relating to the sufficiency of the evidence. We reverse and render.

**Background**

A Smith County grand jury indicted Appellant for possessing marijuana in an amount of fifty pounds or less but more than five pounds. Appellant pleaded "not guilty" to the indictment, and a jury trial was held. Ultimately, the jury found Appellant "guilty," and assessed his punishment at ten years of imprisonment with a $10,000.00 fine. This appeal followed.

**Sufficiency of the Evidence**

In his sole issue, Appellant contends the evidence is legally insufficient to prove that he possessed marijuana. The State contends that the combined circumstantial evidence, coupled with reasonable inferences therefrom, established that Appellant knowingly possessed marijuana.

**Standard of Review**

**HN1**.  When sufficiency of the evidence is challenged on appeal, we view all of the evidence in the
light most favorable to the verdict to decide whether any rational trier of fact [*2]  could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Under this standard, the jury is the sole judge of the witnesses' credibility and the weight of their testimony. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Brooks*, 323 S.W.3d at 899. A jury is permitted to draw multiple reasonable inferences, but it is not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions. *Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007).

A "presumption" is a legal inference that a fact exists if the facts giving rise to the presumption are proven beyond a reasonable doubt. *Id*. at 16. An "inference" is a conclusion reached by considering other facts and deducing a logical consequence from them. *Id*. "Speculation" is mere theorizing or guessing about the possible meaning of facts and evidence presented. *Id*. A conclusion reached by speculation may not be completely unreasonable, but it is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt. *Id*.

**HN2**. When we apply the *Jackson v. Virginia* standard of review, we determine whether the

necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Garcia v. State*, 367 S.W.3d 683, 687 (Tex. Crim. App. 2012). [*3] When the record supports conflicting inferences, we must presume that the fact finder resolved the conflicts in favor of the prosecution and defer to that determination. *Id*.

In determining whether the state has met its burden of proving the defendant guilty beyond a reasonable doubt, we compare the elements of the crime as defined by a hypothetically correct jury charge to the evidence adduced at trial. *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014). A hypothetically correct jury charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the state's burden or restrict its theories of liability, and adequately describes the particular offense for which the defendant was tried. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

As charged in the indictment, the State was required to show that Appellant intentionally or knowingly possessed a usable quantity of marijuana in an amount of fifty pounds or less but more than five pounds. *See* Tex. Health & Safety Code Ann. § 481.121(a), (b)(4) (West 2010). Here, Appellant contests only the element of possession. We limit our analysis accordingly. *See* Tex. R. App. P. 47.1.

**Applicable Law**

**HN3**. To prove unlawful possession, the state must prove that (1) the defendant exercised control, management, or care over the substance, [*4] and (2) the accused knew the matter possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005); *see also* Tex. Health & Safety Code Ann. § 481.002(38) (West Supp. 2014) (defining possession as "actual care, custody, control, or management"). Whether direct or circumstantial, the evidence "must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous." *Poindexter*, 153 S.W.3d at 405. This is known as the "affirmative links" rule, which protects the innocent bystander from conviction "merely because of his fortuitous proximity to someone else's drugs." *Evans v. State*, 202 S.W.3d 158, 161-62 (Tex. Crim. App. 2006).1 Thus, when the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that he had knowledge of and control over the contraband "unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." *Poindexter*, 153 S.W.3d at 406.

**FOOTNOTES**

1 In *Evans v. State*, the court of criminal appeals recognized that the word "affirmative" adds nothing to the plain meaning of "link," and states that evidence of drug possession is judged by the same standard as all other evidence. *See Evans v. State*, 202 S.W.3d 158, 161 n.9 (Tex. Crim. App. 2006).

**HN4**.  The Texas Court of Criminal Appeals has recognized that some factors which "may circumstantially establish [*5]  the legal sufficiency of the evidence to prove a knowing 'possession'" include the following: (1) the defendant's presence when a search is conducted, (2) whether the contraband was in plain view, (3) the defendant's proximity to and the accessibility of the narcotics, (4) whether the defendant was under the influence of narcotics, (5) whether the defendant possessed other contraband or narcotics when arrested, (6) whether the defendant made incriminating statements when arrested, (7) whether the defendant attempted to flee, (8) whether the defendant made furtive gestures, (9) whether there was an odor of contraband, (10) whether other contraband or drug paraphernalia were present, (11) whether the defendant owned or had the right to possess the place where the drugs were found, (12) whether the place where the drugs were found was enclosed, (13) whether the defendant was found with a large amount of cash, and (14) whether the conduct of the defendant indicated a consciousness of guilt. *See Evans* at 162 n.12.

The number of factors is not as important as the logical force the factors have in establishing the elements of the offense. *Hargrove v. State*, 211 S.W.3d 379, 386 (Tex. App. - San Antonio 2006, pet. ref'd). Therefore, each case must be examined according to its own facts [*6]  on a case by case basis. *Burrell v. State*, 445 S.W.3d 761, 765 (Tex. App. - Houston [1st Dist.] 2014, *pet. ref'd*) (noting that a factor that contributes to sufficiency in one situation may be of little value in another situation).

**The Evidence**

On the night of September 13, 2013, Trooper Chad Martin conducted a traffic stop on a 2005 Chevrolet Suburban for a defective license plate lamp. Lapatrick Mitchell was the driver, and Appellant was the passenger.

Mitchell had a Louisiana driver's license and Appellant had no identification. Mitchell told Trooper Martin that he and Appellant went to Dallas from Louisiana and were on their way home. Mitchell first said that they went to get a tire fixed. Trooper Martin testified that he thought it was "odd" to drive from Louisiana to Dallas to fix a tire because the drive takes approximately three hours. But Mitchell also told Trooper Martin that they took Appellant's aunt to Dallas, and ate at two restaurants. Mitchell did not describe any other activities that they engaged in, but the record reflects that Mitchell and Appellant were together the entire time.

Trooper Martin's conversation with Mitchell began inside the Suburban, but ultimately moved outside. Appellant remained inside the vehicle while Trooper Martin spoke to Mitchell. [*7]  But prior to Mitchell's exiting the vehicle, Appellant's demeanor was, according to the trooper, "very odd" for a passenger.

Trooper Martin testified that when he first approached the driver's side of the vehicle,

Appellant had unbuckled his seat belt and was looking at him like a "deer in the headlight[s]." Appellant's demeanor was so uncommon that one of Trooper Martin's first questions to Appellant was whether he "plan[ned] on running." Trooper Martin had more extensive contact with Appellant after Mitchell exited the vehicle. The trooper testified that during their second contact, Appellant was breathing rapidly and had a "heightened sense of nervousness that was not normal." In addition, Appellant's hands were "visibly trembling." Because Appellant's nervousness and trembling were so pronounced, Trooper Martin inquired whether Appellant had any warrants, but Appellant denied that he did.

When Trooper Martin questioned Appellant about his and Mitchell's trip to Dallas, Appellant could not tell him what time they left for Dallas that day. However, he advised Trooper Martin that they went to Dallas to "get" a tire and to drive Mitchell's aunt to Dallas.2 The trooper testified that Appellant's explanation [*8] was inconsistent with Mitchell's. But he recounted that when he told Appellant that Mitchell said it was Appellant's aunt, Appellant disagreed, and then said, "Well, it's both of our aunts, really."

**FOOTNOTES**
2 On cross-examination, the evidence showed that there was a new tire in the back of the Suburban.

The evidence showed that neither Mitchell nor Appellant owned the Suburban. Trooper Martin testified that third party vehicles are commonly used to transport illegal drugs for long distances. He further testified that he asked Mitchell why he was driving someone else's vehicle. According to Mitchell, the Suburban was more efficient than his vehicle. Ultimately, Trooper Martin obtained Mitchell's consent to search the vehicle.

Prior to his search, Trooper Martin did not notice any odor of marijuana. However, when he opened one of the back compartments of the Suburban, he found a "brand new roll of cellophane" and two cans of axle grease. Trooper Martin testified that the discovery of these items was significant because cellophane is commonly used to wrap illegal drugs and axle grease is commonly used to mask their odor. But, despite this discovery, Trooper Martin did not find any marijuana or other [*9] contraband inside the passenger compartment of the Suburban. It was not until he looked underneath the driver's side dashboard that he "got a big hint of raw marijuana smell—odor." Trooper Martin then opened the hood and found wrapped marijuana bundles inside the engine compartment.

The video from Trooper Martin's patrol car captures the entire interaction between Trooper Martin, Mitchell, and Appellant during the traffic stop. The video is consistent with Trooper Martin's testimony. It shows that Trooper Martin remarked to Mitchell about Appellant's nervousness and reflects that Trooper Martin told Mitchell that Appellant's nervousness was making him nervous. The video also shows that when the trooper returned from the front of the vehicle and ordered both men to get on the ground, neither Mitchell nor Appellant acted

surprised.

The marijuana had a net weight of 8.59 pounds. Trooper Martin's testimony confirmed that its street value was worth "quite a bit of money." He testified that when he questioned Mitchell and Appellant about the marijuana, Mitchell remained silent, and Appellant "just said it wasn't his."

## Discussion

Appellant contends there is no evidence that he had "actual knowledge [*10] of what, if anything, another person may have placed under the hood" of the Suburban. He further argues that there is an "overwhelming lack of any meaningful evidence that he exercised actual or constructive care, custody, or control over the marijuana." The State asserts that the circumstantial evidence, when viewed in light of the reasonable inferences therefrom, is sufficient to establish that Appellant knowingly possessed the marijuana.

### A. Appellant's Knowledge of Contraband

**HN5**. Consciousness of guilt is one of the enumerated factors shown to link an accused to contraband. *See Evans*, 202 S.W.3d at 162 n.12. Conflicting statements about relevant matters, extreme nervousness, and lack of concern or surprise upon the discovery of contraband indicate consciousness of guilt. *See United States v. Del Aguila-Reyes*, 722 F.2d 155, 158 (5th Cir. 1983) (may infer guilty knowledge from lack of concern and surprise upon being advised illegal drugs discovered); *Lassaint v. State*, 79 S.W.3d 736, 744 (Tex. App. - Corpus Christi 2002, *no pet.*) ("Excessive nervous behavior and unsettled demeanor may be examples of consciousness of guilt."); *Washington v. State*, 215 S.W.3d 551, 555 (Tex. App. - Texarkana 2007, *no pet.*).

Here, Appellant's and Mitchell's explanations of "ge[ting]" or "fix[ing]" a tire were similar, but their statements conflicted about whose aunt they drove to Dallas. Appellant's demeanor was odd for a passenger during [*11] a traffic stop because his hands were trembling and his breathing was rapid. Courts have recognized that nervousness is a tenuous link to contraband because most people are somewhat nervous when confronted by a police officer. *See Lassaint*, 79 S.W.3d at 744. However, Appellant's nervousness went beyond what is typical for a normal traffic stop, especially for a passenger. *See id.; Hernandez v. State*, 867 S.W.2d 900, 905 (Tex. App. - Texarkana 1993, *no pet.*).3 Finally, Appellant showed no surprise when Trooper Martin returned from the front of the Suburban, which also indicates a consciousness of guilt. *See Del Aguila-Reyes*, 722 F.2d at 158.

## FOOTNOTES
3 Although Appellant did not flee, his demeanor, when viewed in light of the fact that he had unbuckled his seat belt, suggests that he may have contemplated fleeing from Trooper

Martin.

Each of the aforementioned facts supports an inference that Appellant knew marijuana was inside the engine compartment. *See id.; Lassaint*, 79 S.W.3d at 744; *Washington*, 215 S.W.3d at 555. However, knowledge of illegality does not mean that Appellant per se engaged in criminal activity, specifically, possession of marijuana. *See Allen v. State*, 249 S.W.3d 680, 697 (Tex. App. - Austin 2008, *no pet*.) **(HN6**."[The] mere presence of an accused at a place where contraband is being possessed or used by others, and even the accused's knowledge of an offense by others, does [*12] not constitute joint possession of the contraband.").

**B. Appellant's "Control" of Contraband**

**HN7**. It is well established that mere presence at the location where drugs are found is insufficient, by itself, to establish actual care, custody, control, or management of those drugs. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.002(38); *Evans*, 202 S.W.3d at 162. But, presence or proximity, when combined with other evidence, either direct or circumstantial, may well be sufficient to establish that element beyond a reasonable doubt. *Id*.

Appellant contends that the only reason he was arrested was because the drugs "had to belong to somebody." To support this argument, he cites Trooper Martin's testimony that he arrested Appellant [b]ecause the marijuana's in the—I mean, there's a large sum of marijuana. Somebody put it there. It's in the structure of the vehicle. I mean, you don't borrow somebody's car, and they leave 10 pounds of marijuana in there. That's not—that's not feasible. Evidence that Mitchell and Appellant were traveling on a "major" drug corridor, from a city known as a "drug hub," in a third party vehicle makes it improbable that the owner of the Suburban simply forgot to remove the marijuana inside the engine compartment prior to lending [*13] it. *See Allen*, 249 S.W.3d at 694 (**HN8**."Where the contraband is [hidden], courts require additional facts and circumstances to prove the knowledge element: consciousness of guilt, conflicting statements, or an implausible account of events."); *see also Washington*, 215 S.W.3d at 554 (noting that observing accused in suspicious area under suspicious circumstances is a link); *Cortez-Balleza v. State*, No. 04-03-00818-CR, 2004 Tex. App. LEXIS 11472, 2004 WL 2945680, at *6 (Tex. App. - San Antonio 2004, *pet. ref'd*) (mem. op, not designated for publication) (referencing testimony that third party vehicles are often used in transporting drugs).

Appellant concedes that he was in close proximity to the marijuana because he was inside the Suburban just prior to its being discovered. Appellant was also in close proximity to contraband (cellophane and axle grease) as that was found inside the passenger compartment (albeit in the back of the Suburban). *See Acosta v. State*, 429 S.W.3d 621, 630 n.39 (Tex. Crim. App. 2014) (cellophane commonly used to conceal smell and avoid detection of

drugs). However, the marijuana, the cellophane, and the axle grease bottles were not necessarily "conveniently accessible" because they were out of Appellant's reach and in enclosed compartments. *See Robinson v. State*, 174 S.W.3d 320, 326 (Tex. App. - Houston [1st Dist.] 2005, *pet. ref'd*) (**HN9**."The term 'conveniently accessible' means that the contraband must be within the close [*14] vicinity of the accused and easily accessible while in the vehicle so as to suggest that the accused had knowledge of the contraband and exercised control over it.").

**1. No Evidence of Care, Custody, Control, or Management**

In his brief, Appellant lists a number of links that are lacking. We agree the record reflects that (1) the marijuana was not in plain view, (2) Appellant was not under the influence of marijuana, (3) he did not have any contraband or other narcotics on his person, (4) he did not make any incriminating statements, (5) he did not make any furtive gestures, (6) the smell of marijuana was not detectable from anywhere inside the passenger compartment except for underneath the driver's side dashboard, (7) he did not own the Suburban, nor is there any evidence that he ever drove the Suburban, and (8) Appellant did not have any large amounts of cash or any weapons on his person.

**HN10**. The absence of links does not constitute evidence of innocence. *See Hernandez v. State*, 538 S.W.2d 127, 131 (Tex. Crim. App. 1976). However, we note that the absent links in this case are generally used to support an inference that an accused exercised care, custody, control, or management over a substance.

Our sister courts have found insufficient [*15] evidence to support a conviction of a passenger for a possession offense when there was an absence of evidence to show that the accused exercised actual care, custody, control, or management over a substance. The most recent case comes from the Thirteenth Court of Appeals.

In *Jenkins v. State*, the evidence showed that marijuana was found inside the trunk of a vehicle in which the defendant was a passenger. *Jenkins v. State*, 76 S.W.3d 709, 715 (Tex. App. - Corpus Christi 2002, *pet. ref'd*). An investigation of the vehicle's contents revealed that cocaine was hidden underneath the backseat, along with sandwich bags, rubber gloves, and nearly $2,000 in cash. Id. The court noted the absence of several links that would have indicated the defendant had possession of the marijuana or cocaine: (1) neither the marijuana nor the cocaine was in plain view, (2) the defendant did not own or exercise any control over the vehicle, (3) the contraband was not in close proximity or conveniently accessible, (4) the odor of marijuana was not detectable without opening the trunk, (5) the defendant possessed no contraband or paraphernalia on his person or in his luggage, and (6) his physical condition did not indicate recent consumption of either marijuana or cocaine. *Id*. at 716-17. The court acknowledged [*16] that the amount of marijuana and cocaine was large, but noted that the defendant did not have a large amount of cash, made no furtive gestures or statements linking

himself to the contraband, and did not indicate a consciousness of guilt. *Id*. at 717-19. Accordingly, the court held that the evidence did not link the defendant to the contraband in such a matter and to such an extent that it was reasonable to infer he knew of the contraband's existence and exercised control over it. *Id*. at 719.

In *Dixon v. State*, the defendant was a passenger in a vehicle in which fifteen pounds of marijuana was found hidden inside a speaker inside the vehicle's trunk. *See Dixon v. State*, 918 S.W.2d 678, 680 (Tex. App. - Beaumont 1996, *no pet*.). The evidence showed that when law enforcement officers approached the vehicle to issue a traffic citation, the defendant "was extremely nervous, his breathing was rapid, his hands were shaking[,] and he would not make eye contact." *Id*. When asked where they were going, the driver said they were from Houston and traveling to Louisiana to visit his sick mother. *Id*. However, when the defendant was asked the same question, he told the officers they were traveling to Louisiana to visit the driver's sick sister, and that they were going to [*17] be there for three days. *Id*. The insurance on the vehicle was in neither the defendant's nor the driver's name and there was no luggage or clothes in the vehicle. *Id*. Neither man admitted ownership of the marijuana. *Id*.

The defendant challenged the sufficiency of the evidence to prove that he had "actual care, control[, or] management" over the marijuana. *See* id. The only factors linking the defendant to the contraband were his extreme nervousness, the conflicting statements regarding his and the driver's visit, the absence of luggage and clothes, and the fact that the vehicle was borrowed. *Id*. at 681. In reversing the conviction, the Ninth Court of Appeals held that the factors indicating the defendant did not have control of the contraband were more numerous and more convincing: (1) the defendant did not own the vehicle and there was no evidence that he drove it, (2) there was no evidence that any of the trunk's contents belonged to the defendant or that the defendant had access to the trunk, (3) there were no fingerprints on the speaker containing the contraband or on anything else in the trunk, (4) the defendant did not attempt to flee, and made no incriminating statements or furtive gestures, [*18] (5) there was no odor of marijuana, no drugs, and no paraphernalia for using the contraband, and (6) the defendant was not under the influence of marijuana at the time of the stop. Id. at 681-82. Thus, the court concluded there was no evidence that the defendant had actual care, custody, control, or management over the contraband. *Id*. at 682.

In *Moreno v. State*, four hundred grams of cocaine were found inside a vehicle's engine compartment. *Moreno v. State*, 821 S.W.2d 344, 348 (Tex. App. - Waco 1991, *pet. ref'd*). The driver and the passenger were jointly tried and convicted for possessing the cocaine. Id. The Tenth Court of Appeals affirmed the driver's conviction, but reversed the passenger's. *Id*. at 348-49.

The evidence showed that the driver was known for distributing drugs and had been observed engaging in drug activity on prior occasions. *Id*. at 350. The court concluded that the

evidence was sufficient to affirm the driver's conviction because he was driving, maintained insurance, and made several payments on the vehicle in which the cocaine was found. *Id*. at 351. However, the passenger was not connected with the ownership or control of the vehicle, did not attempt to escape, made no furtive gestures or incriminating statements, and was not under the influence of an illegal drug. *See id*. at 352. [*19]  There was no odor of cocaine in or around the vehicle, and the passenger's relationship with the driver "was not explored." *Id*. The only evidence linking the passenger to the cocaine found inside the engine compartment was .11 grams of cocaine found in the passenger's wallet. *Id*. However, the court held that this was insufficient to link the passenger to the cocaine found in the engine compartment because it was not tested for its purity and thus could not be connected with the larger amount of cocaine. *Id*.

## 2. Circumstantial Evidence of Care, Custody, Control, or Management

The absence of links in *Jenkins*, *Dixon*, and *Moreno* amounted to no evidence of care, custody, control, or management of the contraband. *See generally Jenkins*, 76 S.W.3d 709; *Dixon*, 918 S.W.2d 678; *Moreno*, 821 S.W.2d 344. The First Court of Appeals reached the same conclusion in *Blackman v. State*, but the Texas Court of Criminal Appeals disagreed. *See Blackman v. State*, 349 S.W.3d 10, 22 (Tex. App. - Houston [1st Dist.] 2009), *rev'd*, 350 S.W.3d 588 (Tex. Crim. App. 2011) (Blackman I). The court of appeals held there was no evidence that the defendant exercised control over the contraband because the State's case "rests entirely on [the accused's] presence in the van." *Blackman* I, 349 S.W.3d at 22.

The court of criminal appeals noted testimony from officers regarding conduct common to drug traffickers [*20]  as evidence supporting an inference that the defendant exercised care, custody, control, or management over the contraband. *See Blackman v. State*, 350 S.W.3d 588, 592 (Tex. Crim. App. 2011) (*Blackman* II). The defendant argued that he was an innocent bystander to a narcotics transaction. *Id*.

The evidence showed that the defendant and two other men were in a van and had been under surveillance for two days when investigators witnessed a drug transaction between the van's driver and individuals in a Toyota. *Id*. at 590-91. The van had been rented in St. Petersburg, Florida, which was several hundred miles from where they were under surveillance in Pasadena, Texas. *Id*. at 589. When law enforcement stopped the van for a traffic violation, the defendant was in the front passenger seat, and had a large amount of cash on his person. *Id*. at 591-92.

One of the investigators testified that the men inside the van (including the defendant) acted "like narcotic traffickers." *Id*. at 592. The evidence showed that it was common for drug traffickers to travel from Florida to the Pasadena area to purchase narcotics and that it was also common to use rental vehicles on these trips because rental vehicles are not subject to forfeiture if the traffickers are caught. *Id*. at 589. The testimony also [*21]  showed that drug

traffickers commonly use "props" to disguise illegal activity and that props were found inside the van. *See id.* at 592. Specifically, investigators found a family reunion invitation with no time, date, or location for the reunion, and a Bible with a name embossed on it that was not the name of any of the three men. *Id.* Finally, the State presented evidence that it is uncommon for narcotics traffickers to bring innocent-bystander witnesses to large scale narcotics transactions. After citing this evidence, the court of criminal appeals held as follows:

> A jury could reasonably find that appellant and the other two men traveled hundreds of miles together for the common purpose of purchasing three kilograms of cocaine. Their behavior during the time that they were under surveillance by the police, during which they did practically everything together, was consistent with this purpose. A jury could reasonably find that [the driver] would not bring two innocent-bystander witnesses hundreds of miles to a large-scale narcotics transaction. A jury could also reasonably rely on the opinion of an experienced narcotics investigation that appellant and the other two men acted like narcotics [*22] traffickers. These "independent facts and circumstances" affirmatively link appellant to the contraband.
> *Id.* at 595-96.

## C. Speculation of Care, Custody, Control, or Management

Like the men in *Blackman* II, Appellant and Mitchell were in an area known to be a drug corridor. See id. at 589-91. Although they were not arrested in an area known for narcotics transactions, their statements to Trooper Martin confirmed that they had left a known drug hub. See id. Similar to *Blackman* II, Mitchell and Appellant were traveling in a borrowed vehicle, which is also a common practice for drug traffickers who are traveling long distances, and the amount of contraband discovered was large.4 *See id.*

**FOOTNOTES**
4 We do not categorize the tire found in the backseat as a "prop" used to disguise illegal activity because there was no such testimony presented at trial.

However, unlike *Blackman* II, Mitchell and Appellant had not been under surveillance prior to their traffic stop, and Trooper Martin did not witness either of the men engage in a major drug transaction. *See id.* We do not question the credibility of Trooper Martin's testimony. We also recognize that the evidence showed that his suspicion of criminal activity was correct. *See Dixon*, 918 S.W.2d at 681. [*23]

The borrowed Suburban, presence on Interstate 20, Mitchell's and Appellant's conflicting statements, and Appellant's nervousness and lack of surprise are links showing Appellant's knowledge of the contraband inside the Suburban's engine compartment. However, unlike

*Blackman*, there is no circumstantial evidence in this case to show that Appellant exercised care, custody, control, or management over the marijuana - he was a passenger, he was not under the influence of marijuana, he made no statements linking himself to the marijuana, he possessed no other contraband or paraphernalia on his person, he made no incriminating statements, and law enforcement did not witness a drug transaction in Appellant's presence. *Compare Jenkins*, 76 S.W.3d at 716-19 and *Dixon*, 918 S.W.2d at 681-82 with *Blackman* II, 350 S.W.3d at 595-96.

To conclude that Appellant exercised actual care, custody, control, or management over the marijuana, we would be required to speculate as to the meaning of the facts and evidence presented. *See Hooper*, 214 S.W.3d at 15. Although such a conclusion would not seem unreasonable, it is nevertheless impermissible. *See id.*

**Conclusion**

Our law requires proof of actual care, custody, control, or management to show possession. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.002(38); *Poindexter*, 153 S.W.3d at 405. The independent [*24] facts and circumstances show that the element of possession was proved by nothing more than Appellant's fortuitous proximity to the drugs. *See Evans*, 202 S.W.3d at 161-62. It is this type of situation that the affirmative links rule sought to prevent. *See id.*

After viewing the evidence in the light most favorable to the verdict, we conclude that no rational trier of fact could have found the possession element of the offense beyond a reasonable doubt. *See Brooks*, 323 S.W.3d at 899. Accordingly, we sustain Appellant's sole issue.

**Disposition**

Having sustained Appellant's sole issue, we reverse the trial court's judgment and render a judgment of acquittal.

Greg Neeley
Justice

Opinion delivered October 14, 2015.

Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.

(DO NOT PUBLISH)

**JUDGMENT**

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this court that the judgment of the trial court be reversed and a judgment of acquittal be, and the same is, hereby rendered herein in accordance with the opinion of this court; and that this decision [*25] be certified to the court below for observance.

Greg Neeley, Justice.